OPINION OF THE COURT
 

 Levine, J.
 

 These appeals involve the charge of endangering the welfare of a child as applied in the context of shooting accidents in which a child in the household of a gun owner obtained unauthorized possession of a weapon and inadvertently discharged it, resulting in another child’s injury or death. Under Penal Law § 260.10 (1), a person endangers the welfare of a child when “[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.” The common issue in both appeals is whether the evidence was legally sufficient to establish the basic elements of endangering the welfare of a child: namely, whether defendants “knowingly” acted in a manner “likely to be injurious” to a minor. We hold that the evidence was legally sufficient in
 
 Hitchcock,
 
 but insufficient in
 
 Duenas.
 

 Defendant Terry Hitchcock resided with his fiancée, her 14-year-old son Billy, and two younger children, ages 4 and 13.
 
 *590
 
 One day, when the children were unsupervised, Billy and his friend Dustin, a neighbor and regular visitor to the household, took one of defendant’s five handguns located on an open tool tray in a doorless second-floor room, and loaded it. The two boys then went outside to practice target shooting. When Billy attempted to dislodge a bullet that was stuck in the chamber, the gun went off and a bullet struck Dustin, injuring him.
 

 Law enforcement authorities, who arrived after the shooting, inspected the residence and ultimately seized 23 firearms, none under lock and key. Defendant was charged with and convicted by a jury of endangering the welfare of a child. County Court, sitting as an intermediate appellate court, affirmed defendant’s conviction, rejecting defendant’s argument that the evidence was legally insufficient to support the endangering charge. A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 Defendant Alex Dueñas and his girlfriend lived at his family’s home, along with his 11-year-old brother, Daniel. Dueñas purchased a gun illegally and secreted it in his bedroom. Unknown to defendant, his brother peered through a crack in the bedroom door one night and saw defendant cleaning what appeared to be a gun. Daniel did not tell anyone what he had observed. Several months later, while defendant was away, Daniel entered defendant’s bedroom, searched for it for “about an hour,” and discovered the gun, which had been loaded and wrapped in rags, inside a stereo speaker hidden in a closet behind various items of clothing and bags. Daniel returned to his own bedroom where he and a visiting friend played with the gun. The gun accidentally discharged, killing the friend.
 

 After a bench trial at Criminal Court of the City of New York, defendant was convicted of criminal possession of a weapon in the fourth degree and endangering the welfare of a child. The Appellate Term modified by vacating defendant’s conviction for child endangerment, and affirmed the illegal weapons conviction. A Judge of this Court granted the People leave to appeal, and we likewise affirm.
 

 Criminal liability for endangering the welfare of a child is imposed when a defendant engages in conduct knowing it will present a “ ‘likelihood’ of harm to a child (i.e., with an awareness of the potential for harm)”
 
 (People v Johnson,
 
 95 NY2d 368, 372 [2000];
 
 see also
 
 Penal Law § 15.05 [2] [“A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware
 
 *591
 
 that his conduct is of such nature or that such circumstance exists”]). In short, “a defendant must simply be
 
 aware
 
 that the conduct may likely result in harm to a child”
 
 (People v Johnson,
 
 95 NY2d at 372 [emphasis in original]). The People also must establish that the harm was likely to occur, and not merely possible. The statute does not require proof, however, that a defendant directed the relevant conduct at the child
 
 (Johnson,
 
 at 371-372).
 

 People v Simmons
 
 (92 NY2d 829 [1998]) and
 
 People v Johnson
 
 (95 NY2d 368) are particularly instructive here. In
 
 People v Simmons,
 
 where a day care center teacher was found to have “repeatedly direct[ed] vulgar remarks of a sexual nature to a child aged 23 months,” we concluded that such evidence was legally sufficient to support the jury finding of endangering the welfare of a child (92 NY2d at 830). In
 
 People v Johnson,
 
 the proof established that defendant, over a period of 10 hours, brutally beat and verbally abused the mother while her children — an infant, a 7 year old and a 12 year old — were confined in an adjoining room of their apartment. Relying on studies concerning the profound adverse effect on children who witness domestic violence, we concluded that the evidence was sufficient for a jury to conclude both that defendant’s assaultive conduct created a likelihood of harm to the children and that defendant was aware of that risk.
 

 In reviewing whether the evidence presented by the prosecution in the two cases before us was legally sufficient to convict defendants of the crime of endangering the welfare of a child, we must determine “whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt”
 
 (People v Chico,
 
 90 NY2d 585, 588-589 [1997] [internal quotation marks omitted]).
 

 Applying the foregoing standard in
 
 Hitchcock,
 
 we conclude that the evidence was sufficient to permit a jury reasonably to conclude that defendant knowingly engaged in conduct likely to be injurious to a child. Hitchcock had 23 firearms in the home at the time of the shooting — virtually all of them openly accessible. Four semiautomatic weapons and an assault rifle were among the 23 firearms seized. One of the guns was loaded. Hitchcock kept five handguns in an open second-floor room, in plain view. The guns were in a tray, with clips of ammunition underneath the weapons in the same tray. Defendant testified that, on several occasions, he had shown Billy how to load handguns, remove their safety catch and fire them. Defendant also admitted that on a previous occasion he
 
 *592
 
 suspected, that his guns had been “rotated around,” in disregard of his prior admonition to the children not to touch them. Finally, the evidence established that Dustin was a frequent visitor to the household.
 

 Based upon this confluence of events and circumstances, the jury could reasonably have inferred that defendant knowingly possessed and stored his guns in a manner likely to be injurious to the welfare of the children living in his home and their child guests. The jury could have reasonably concluded from this record that Billy, when accompanied by a friend and with no adult at home, would have been likely to take a gun, load and try to discharge it. The jury could further conclude that a loaded pistol in the hands of an unsupervised and inexperienced boy of 14 created a likelihood of accidental injury to himself or that other child.
 
 *
 

 We reach a different conclusion with respect to the legal sufficiency of the evidence in
 
 Dueñas.
 
 Unlike the
 
 Hitchcock
 
 case, the evidence in
 
 Dueñas
 
 indicates only that, although defendant stored one gun at home, he made a significant effort to conceal it. Indeed, defendant’s young brother had to search the bedroom for an hour before discovering the weapon. There is no evidence that any other family member knew the gun was in the house. Defendant himself was not aware that his brother knew that the gun was in the apartment. Thus, under these particular circumstances, the evidence was legally insufficient for a trier of fact rationally to conclude that defendant was aware that his conduct would likely be injurious to a child. As noted by Appellate Term, to hold otherwise would approximate establishing per se liability based on ownership of a gun at home and injury to a child, which exceeds the intended scope of the endangering statute.
 

 Accordingly, the order of County Court should be affirmed in
 
 People v
 
 Hitchcock; in
 
 People v Dueñas,
 
 the order of Appellate Term should also be affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In each case: Order affirmed.
 

 [Next page is 601.]
 

 *
 

 Defendant’s remaining contentions for reversal lack merit.