OPINION OF THE COURT
Michael Gerstein, J.
*735 The evidence in this case, tried to the court, proved beyond any doubt that defendant, a school bus attendant whose sole job was to supervise no more than 12 children, left the then seven-year-old complainant asleep on the bus. He remained there while the bus was driven halfway across Brooklyn, and parked. The issue in this case is whether these facts are sufficient to convict the defendant of attempted endangering the welfare of a child (Penal Law §§ 110.00, 260.10), a class B misdemeanor, without direct proof that defendant intended to endanger the child. Under the circumstances of this case, we hold that they are, and therefore find the defendant guilty under the statute.
On February 16, 2007, Isaiah M., a “special needs” child who was then seven years old, was placed on the school minibus by his mother. The minibus had a seating capacity of 12 people, including the defendant, a school bus attendant responsible for ensuring the children’s safety. During the trip, Isaiah fell asleep, did not get off the bus when it arrived at his school, and woke up some time later, alone, in the unfamiliar location where the bus was parked.
Legal and Factual Background
The People called six witnesses in support of their case. First, the People called Doreen Foy and Joseph Van Aken, both instructors with Pupil Transportation Professionals, a training center for school bus drivers and attendants, associated with the New York City Department of Education. Ms. Foy and Mr. Van Aken testified that each bus attendant is trained to sit at the back of the bus, behind all of the children; to note the presence or absence of each child on a “trip sheet” given to them for that purpose;[1] to walk to the front and back of the vehicle when the bus arrives at school, checking each seat for sleeping children; and, after completing this function, to place a placard at the back window stating, in essence, “this bus has been checked for sleeping children.”
Ms. Foy testified that she herself had trained the defendant. A copy of a certificate labeled “School Bus Escort Basic Training Program” issued to the defendant on August 1, 2004 was admitted into evidence as People’s exhibit 2.
*736 The People next called the complaining witness, Isaiah M., who gave unsworn testimony on account of his age.[2] The complaining witness testified that he woke up where the school bus was parked, “on the street.” He further testified that, alone and in an unfamiliar place, he opened the door of the bus, got off, and sought the help of a stranger, who found him in the middle of the street and brought him to a police precinct. Officer Josip Vuckovic, the People’s next witness, testified that the Good Samaritan brought Isaiah to a police precinct in Bensonhurst, which the court will take judicial notice is many miles from Isaiah’s school and home. Officer Vuckovic additionally testified that the defendant was arrested and brought to the precinct later that day, where she gave a statement.[3]
The People then called Isaiah’s mother, Shirley M., who testified that, on the morning in question, she placed her child on the school minibus, a vehicle with a seating capacity of 12 people, in front of their residence in East Flatbush, to be driven to school in Canarsie, more than a mile away. She identified the defendant as having been Isaiah’s bus attendant on that date and for the entire school year. Later that day, Ms. M. received a call from the school informing her that her child had been left on the school bus, and retrieved Isaiah from the hospital where he had been taken for examination following the incident.
The People also called Agatha Salato, a paraprofessional specialist at Isaiah M.’s school, responsible for counting the children who leave the school bus, and for seeing that the younger children are escorted to the school cafeteria for breakfast. Ms. Salato testified that, on the date of the incident, Isaiah did not get off the bus, and that he was absent from his regular class where she assisted the classroom teacher.
Defendant did not call any witnesses, but, at the conclusion of the trial, defense counsel argued that the People had failed to prove the crime of attempted endangering the welfare of a child beyond a reasonable doubt because the People failed to show *737 defendant’s knowledge that her conduct was likely to result in a child’s harm, and that sometimes “a mistake is just a mistake.” Defense counsel cited People v Vargas (8 Misc 3d 113 [2d Dept 2005], lv denied 5 NY3d 795 [2005]); People v Simmons (221 AD2d 994 [1995], lv denied 88 NY2d 885 [1996]); People v Williams (12 Misc 3d 1159[A], 2006 NY Slip Op 50967[U] [Crim Ct, Kings County 2006]); and People v Chase (186 Misc 2d 487 [2000]).
The Evidence is Sufficient to Establish Attempted Endangering the Welfare of a Child (Penal Law §§ 110.00, 260.10 [1]) Beyond a Reasonable Doubt
Penal Law § 260.10 (1), endangering the welfare of child, provides:
“A person is guilty of endangering the welfare of a child when:
“1. He [or she] knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.”
Defendant is charged with attempting to endanger the welfare of a child, pursuant to Penal Law § 110.00, which requires an intent to commit a crime and conduct which tends to effect the commission of such crime. The term “knowingly” is further defined in Penal Law § 15.05 (2) as follows: “A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.”
Penal Law § 260.10 requires proof “that a person knowingly act. . . in a manner likely to be injurious to the physical, mental or moral welfare of a child.” (People v Cenat, 176 Misc 2d 39, 43 [Crim Ct, Kings County 1997], citing People v Doe, 137 Misc 2d 582 [Crim Ct, NY County 1987].) While the likelihood of harm may be inferred from the circumstances surrounding the child, the People are required to prove actual knowledge. (People v Simmons, supra.)
Defendant’s argument relies on the theory that in order to prove knowledge, the People were required to show that the defendant committed an affirmative and intentional act directed at Isaiah M., knowing that this act would result in harm. As the Court of Appeals has held, however, “Criminal liability for endangering the welfare of a child is imposed when a defendant engages in conduct knowing it will present a ‘ “likelihood” of harm to a child (i.e., with an awareness of the potential for *738 harm)’.” (People v Hitchcock, 98 NY2d 586, 590 [2002], quoting People v Johnson, 95 NY2d 368, 372 [2000].) The statute requires mere awareness that the defendant’s conduct will likely result in harm. The People need not prove that the defendant committed an affirmative act directed at a child. (People v Hitchcock, supra; People v Johnson, supra.)
Thus, in People v Hitchcock (supra), the Court distinguished between two cases in which the defendants’ omissions — their failure to protect their children from the weapons they possessed in their respective homes — caused injury to a child in their care. Defendant Hitchcock, who kept several handguns at home, none under lock and key, and who had taught his 13-year-old son to load a handgun, was charged with endangering the welfare of a child after his son accidentally shot and injured a friend. The Court of Appeals affirmed the conviction, holding that the defendant “knowingly possessed and stored his guns in a manner likely to be injurious to the welfare of. . . children.” (98 NY2d at 592.) The Court of Appeals simultaneously affirmed the dismissal of the count of endangering the welfare of a child against defendant Dueñas, who had taken considerable measures to conceal his gun from his child. The Court found that under those “particular circumstances,” the evidence was legally insufficient to support the conclusion that the defendant was aware that his conduct would likely be injurious, given the “significant effort” the defendant had made to protect his son. (Id.)
Other courts have similarly upheld convictions under Penal Law § 260.10 where a defendant failed to provide adequate food, clothing and shelter to a child in his care (People v Scutt, 19 AD3d 1131 [2005]); failed to adequately supervise a child left at her home where the defendant was allegedly providing unlicensed child care services (People v Charvat, 8 Misc 3d 13 [2005]); drove dangerously and while intoxicated with a child in the car (People v D ’Ambrosia, 192 Misc 2d 560 [Brighton Just Ct 2002]); or where a school bus driver simply left a child alone at the child’s home without supervision (People v Watson, 182 Misc 2d 644 [Crim Ct, Bronx County 1999]).
In this case, the undisputed evidence at trial established that Isaiah M. was one of at most 12 “special needs” children who had been in the defendant’s care every school day morning on the minibus since the beginning of that school year; that he boarded the minibus that morning, with the defendant’s help; and that he did not get off the minibus at his school.
*739 The defendant’s sole responsibility in her capacity as school bus attendant, a responsibility for which she specially trained, was to supervise the children during the trip and to check the bus for sleeping children. The logical, if not inescapable, conclusion — where a sleeping child escapes notice in a vehicle with a seating capacity of 12 — is that no one looked to see if he was there. The court need not delve further into the defendant’s mind to find evidence of the requisite intent: her knowing failure to check the minibus for children.
The cases cited by defendant’s counsel are unavailing to his argument. In People v Simmons (supra), the Fourth Department held that the element of knowledge could not be proven where the defendant merely “should have known and been aware that [defendant’s] conduct would have been injurious.” (221 AD2d at 995.) This is not our conclusion in this case where the People established that the defendant knew that Isaiah was in her temporary care and knowingly failed to see him off the bus.
Similarly, in People v Williams (supra), the defendant was accused of assaulting his wife in the presence of his children, and charged with assault and endangering the welfare of a child. There, the People could not prove the underlying assault charges, and therefore could not prove that, by this assault, the “Defendant . . . create[d] a likelihood of physical, mental or moral injury to his child.” (2006 NY Slip Op 50967[U], *4.)
In People v Chase (supra), the court declined to find that a defendant who was driving while intoxicated had endangered the welfare of a child where the record failed to show that the defendant was driving in a dangerous manner, or endangered the child in any way. People v Vargas (supra), the last case cited by the defendant, merely restates the knowledge requirement under the statute, which we do not dispute.
We are aware that the court in People v Dalmage (NYLJ, May 1, 2001, at 20, col 3 [Crim Ct, Kings County]) dismissed a complaint alleging circumstances similar to those in our case. However, that court did not have the guidance of the subsequent Court of Appeals decision in People v Hitchcock (supra), which we believe to be controlling. Our case is easily distinguished from People v Dalmage by the testimony of Ms. Foy and Mr. Van Aken, who testified as to the training given to defendant. Indeed, Mr. Van Aken testified that he specifically advised defendant that her failure to awaken and remove a sleeping child would result in criminal liability. While his views, of course, are *740 not determinative of the law, they are sufficient to show that defendant well knew, and not merely should have known, the consequences of her conduct in overlooking a sleeping child.
We hold that a defendant who is entrusted with the temporary care of a seven-year-old child with special needs and who, being responsible for ensuring that the child gets off the bus when the bus arrives at school, and being trained for that responsibility, nevertheless consciously fails to check the seats, knowingly acts in a manner likely to be injurious to the welfare of that child left asleep on the bus. While a mistake may sometimes just be a mistake, as argued by the defendant, this is not one of those times.
We therefore find the defendant guilty of attempted endangering the welfare of a child (Penal Law §§ 110.00, 260.10).

. A blank trip sheet was introduced into evidence as People’s exhibit 1.

. Since Isaiah testified as an unsworn witness, corroboration was necessary both to show that a crime had been committed, and that the defendant was linked to the crime. (CPL 60.20; People v Groff, 71 NY2d 101 [1987].) Defendant did not seriously dispute that Isaiah’s testimony was corroborated for both the commission of a crime (other than counsel’s contention regarding intent, as set forth below), and defendant’s connection thereto.

. The court suppressed the statement in view of Officer Vuckovic’s testimony that prior to giving the statement, defendant was neither free to leave, nor had she been given Miranda warnings. (People v Huntley, 15 NY2d 72 [1965].)