Judge Carney dissents in a separate opinion.
Hall, Circuit Judge:
*610 Petitioner Gerard Patrick Matthews seeks review of an August 2016 decision of the Board of Immigration Appeals ("BIA"), affirming an April 2016 decision of an Immigration Judge ("IJ") that ordered Matthews removed to Ireland on the ground that his convictions for endangering the welfare of a child under New York Penal Law ("NYPL") § 260.10(1) made him removable under Immigration and Nationality Act ("INA") § 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i), which provides that "[a]ny alien who at any time after admission is convicted of ... a crime of child abuse, child neglect, or child abandonment is deportable." Matthews argues that he is not removable because the New York statute of conviction is not categorically a crime of child abuse under the INA. First, he argues that the INA's definition of crime of child abuse requires that there be actual harm to a child, or at least a high risk of serious injury. He challenges the BIA's definition, which encompasses state child endangerment offenses that involve a sufficiently high risk of physical, mental, or moral harm to a child. Because we have deferred to the BIA's definition as a reasonable interpretation of the crime of child abuse provision in a precedential decision, Florez v. Holder , 779 F.3d 207 (2d Cir. 2015), and we find no basis for departing from that decision, we reject Matthews's first argument and continue to apply the BIA's definition of crime of child abuse. Second, Matthews argues that the New York child endangerment law, NYPL § 260.10(1), stretches even further than the BIA's broad definition because the statute and New York courts' interpretation of it allow for convictions based on conduct that poses only a minimal risk of nonserious harm to a child. We reject this argument as well: NYPL § 260.10(1) 's text and New York court decisions applying the statute require proof of a knowing mental state and a likelihood of harm, and Matthews has not shown a realistic probability of conviction for conduct that does not pose a likelihood of harm.
We DENY the petition for review.
BACKGROUND
Petitioner Gerard Patrick Matthews is a native and citizen of Ireland who has lived in the United States as a lawful permanent resident since 1989. Matthews, who was physically and sexually abused as a child, has a long history of alcoholism and has repeatedly exposed himself in public while intoxicated. Between 1990 and 2011, these public exposure incidents resulted in at least nine convictions for public lewdness and two convictions for endangering the welfare of a child under *611 New York Penal Law ("NYPL") § 260.10(1).[2] Section § 260.10(1) prohibits, as relevant here, "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." Matthews was convicted in 2002 of violating NYPL § 260.10(1) and was sentenced to six months' imprisonment. In 2003, he pleaded guilty to another NYPL § 260.10(1) violation as well as a public lewdness charge under NYPL § 245.00 and was sentenced to concurrent terms of imprisonment of one year and 90 days, respectively. Matthews testified at his removal hearing that he never intentionally targeted children when he engaged in publicly lewd behavior; rather, he targeted adults, and the child endangerment charges were tacked onto his public lewdness charges because children happened to be present. However, the IJ did not credit Matthews's accounts of the circumstances of these convictions because they were in stark contrast to the criminal complaints, which alleged that he targeted a nine-year-old boy in one case and two teenage girls in the other.
In 2011, the Department of Homeland Security placed Matthews in removal proceedings through service of a Notice to Appear ("NTA"). The NTA charged Matthews as removable on the ground that his New York convictions for endangering the welfare of a child were crimes of child abuse, child neglect, or child abandonment under 8 U.S.C. § 1227(a)(2)(E)(i). An IJ initially granted Matthews discretionary relief from removal, but the BIA overturned that ruling in 2013. Matthews petitioned for review, and we remanded the case for the agency to explain fully its denial of relief. Matthews v. Holder , 590 F. App'x 75 (2d Cir. 2015). We declined to consider Matthews's then-unexhausted argument that his convictions for endangering the welfare of a child were not removable offenses (i.e., crimes of child abuse, child neglect, or child abandonment), but observed that Matthews could renew this challenge before the agency on remand. Id . at 77.
On remand, the Government added an additional charge that Matthews was removable for having been convicted of two crimes involving moral turpitude ("CIMTs") based on the public lewdness convictions in 1990 and 1994. See INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct ... is deportable.").
In April 2016, the IJ denied all relief and ordered Matthews removed. No. A042 231 142 (Immig. Ct. N.Y. City Apr. 7, 2016). The IJ found that Matthews's public lewdness convictions were not CIMTs, but concluded that Matthews was removable for crimes of child abuse, neglect, or abandonment based on his convictions under NYPL § 260.10(1). The IJ relied on the BIA's precedential decision in Matter of Mendoza Osorio , 26 I. & N. Dec. 703 (B.I.A. 2016), which held that a conviction for endangering the welfare of a child under NYPL § 260.10(1) is a crime of child abuse, neglect, or abandonment under the INA. The IJ denied both adjustment of status and cancellation of removal as a matter of discretion, reasoning that Matthews's "several positive factors" (over twenty-five years' residence in the United States, a strong relationship with his U.S.-citizen wife, work history, and payment of *612 taxes) were outweighed by his criminal history and lack of rehabilitation.
In August 2016, the BIA dismissed Matthews's appeal. In re Gerard Patrick Matthews, No. A042 231 142 (B.I.A. Aug. 30, 2016). The BIA agreed that Matthews was removable, rejecting his argument that Mendoza Osorio misinterpreted the scope of New York's law and holding that NYPL § 260.10(1) "requires a knowing act with a likelihood of harm to a child." Certified Administrative Record ("CAR") at 4. The BIA also agreed with the IJ that Matthews did not merit discretionary relief. Id. at 5.
Matthews, who is represented by pro bono counsel, timely petitioned for review.
DISCUSSION
I. Standard of Review
Where, as here, "the BIA has adopted the IJ's reasoning and offered additional commentary, we review the decision of the IJ as supplemented by the BIA." Gertsenshteyn v. U.S. Dep't of Justice , 544 F.3d 137, 142 (2d Cir. 2008). "Whether a conviction qualifies as a removable offense under a stated provision of the INA is a question of law." Mizrahi v. Gonzales , 492 F.3d 156, 157-58 (2d Cir. 2007). We review the BIA's construction of state criminal law de novo . Id. at 158. "To the extent the question requires us to construe a provision of the INA, however, because the administration of that statute is entrusted to the BIA, our review follows the two-step process outlined in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." Id.
II. The BIA's Definition of "Crime of Child Abuse"
Matthews was ordered removed under 8 U.S.C. § 1227(a)(2)(E)(i), which provides that, "[a]ny alien who at any time after admission is convicted of ... a crime of child abuse, child neglect, or child abandonment is deportable." The statute does not define crime of child abuse, neglect, or abandonment, but the BIA has "interpret[ed] the term 'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." Matter of Velazquez-Herrera , 24 I. & N. Dec. 503, 512 (B.I.A. 2008). The BIA held that,
At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.
Id. The BIA's definition also covers child endangerment offenses where no actual harm or injury occurs, so long as the state statute requires a sufficient risk of harm to a child. Matter of Soram , 25 I. & N. Dec. 378, 381-83 (B.I.A. 2010). In Soram , the BIA held that a Colorado child endangerment statute that state courts had interpreted to require a "reasonable probability" of injury to a child was categorically a crime of child abuse, neglect, or abandonment. Id. at 385-86. The BIA noted that, given the wide degree of variation in state child endangerment statutes, "a State-by-State analysis is appropriate to determine whether the risk of harm required by the *613 endangerment-type language in any given State statute is sufficient to bring an offense within the definition of 'child abuse' under the [INA]." Id. at 383.
Importantly, this is not the first time we have reviewed the BIA's conclusion that a state child endangerment offense is a removable crime of child abuse, neglect, or abandonment under 8 U.S.C. § 1227(a)(2)(E)(i). In 2015, employing the two-step Chevron framework,[3] we found the phrase "crime of child abuse, child neglect, or child abandonment" to be ambiguous because it is not defined in the INA, and we deferred to the BIA's conclusion in Soram that this phrase encompassed at least some child endangerment offenses. Florez , 779 F.3d at 211-14. We noted that in 1996, when Congress added the crime of child abuse provision to the INA, at least nine states had criminal child abuse statutes that covered endangerment without injury. Id. at 212. We suggested, however, that a definition that is not limited to crimes that pose a high enough risk of harm or injury to a child may not be reasonable:
Although the BIA's definition of 'a crime of child abuse' is expansive, it is not unlimited. Soram confirms that a state child-endangerment statute qualifies as a 'crime of child abuse' under the INA only if it requires, as an element of the crime, a sufficiently high risk of harm to a child ... this limitation ensures that the BIA's treatment of state child-endangerment statutes remains within the realm of reason.
Id . The BIA has agreed with this position. In Mendoza Osorio , the agency "recognize[d] that there are child endangerment statutes that do not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment under the [INA]." 26 I. & N. Dec. at 711. As an example, the BIA pointed out that a conviction for misdemeanor child endangerment in California is not a crime of child abuse under the INA because that statute "punishes 'conduct that creates only the bare potential for nonserious harm to a child.' " Id. (quoting Fregozo v. Holder , 576 F.3d 1030, 1037-38 (9th Cir. 2009) ); see also Cal. Penal Code § 273a(b) ("Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, ... willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor." (emphases added)).
Whether a New York misdemeanor conviction for endangering the welfare of a child is a crime of child abuse remains an open question of law in this Circuit. Florez had conceded that NYPL § 260.10(1) fell within the BIA's definition, and therefore we did not need to decide the issue in that case. Florez , 779 F.3d at 209-10, 212.[4] In Matthews's case, the BIA followed Mendoza Osorio , a precedential decision holding that NYPL § 260.10(1) is a crime of child abuse. 26 I. & N. Dec. at 705-12. Focusing on the prong of the statute at issue here, "taking action that is likely to be harmful to a child's welfare," the BIA concluded *614 that a conviction under the statute "requires a showing that the defendant knew that his actions were likely to result in physical, mental, or moral harm to a child." Id. at 705-06. "To act 'knowingly' under New York law, the defendant must have been 'aware' of the nature of his conduct and of the fact that his actions had the potential for harm." Id. at 706 (quoting People v. Johnson , 95 N.Y.2d 368, 372, 718 N.Y.S.2d 1, 740 N.E.2d 1075 (2000) ). "There must also be proof that the harm was 'likely to occur, and not merely possible.' " Id. (quoting People v. Hitchcock , 98 N.Y.2d 586, 591, 750 N.Y.S.2d 580, 780 N.E.2d 181 (2002) ). The BIA reasoned that § 260.10(1) was categorically a crime of child abuse, neglect, or abandonment because a conviction required "a knowing mental state coupled with an act or acts creating a likelihood of harm to a child." Id. The BIA addressed several New York cases applying § 260.10(1) and noted that: (1) state courts regularly dismissed endangerment charges or overturned convictions after determining that a defendant's conduct posed less than a likelihood of harm; and (2) the cases in which the New York courts upheld endangerment charges as facially sufficient, or upheld a § 260.10(1) conviction, involved factual circumstances that posed a likelihood of physical, mental, or moral harm and thus fell within the BIA's definition. Id. at 707-12. The BIA declined to consider redacted complaints and charging documents in its interpretation of the scope of the New York law on the ground that these documents were not accompanied by any proof that the charges led to a conviction. Id. at 707 n.4.
III. Matthews's Arguments on Appeal
Matthews has two arguments. First, he challenges our decision in Florez and argues that we must revisit the Chevron issue in light of a recent Supreme Court decision, Esquivel-Quintana v. Sessions , --- U.S. ----, 137 S. Ct. 1562, 198 L.Ed.2d 22 (2017), which declined to afford Chevron deference to the BIA's interpretation of another INA provision involving "sexual abuse of a minor." Second, he argues that NYPL § 260.10(1) does not fit within the broad definition of a crime of child abuse, neglect, or abandonment that we accepted in Florez because New York court decisions and charging documents show that a conviction for endangering the welfare of a child under NYPL § 260.10(1) requires only a slight chance of nonserious harm to a child. We address these arguments in turn and conclude that both lack merit.
A. Revisiting Florez
"In our Circuit, panels are 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court.' " United States v. Gill , 748 F.3d 491, 502 n.8 (2d Cir. 2014) (quoting United States v. Wilkerson , 361 F.3d 717, 732 (2d Cir. 2004) ). However, a panel may overrule a prior decision if "there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." Gelman v. Ashcroft , 372 F.3d 495, 499 (2d Cir. 2004) (quoting Union of Needletrades, Indus. & Textile Emps. v. INS , 336 F.3d 200, 210 (2d Cir. 2003) ). Matthews argues that the Supreme Court's 2017 decision in Esquivel-Quintana casts doubt on Florez 's method of statutory interpretation (the traditional two-step Chevron analysis) and its conclusion that Soram 's definition of a crime of child abuse was a permissible construction of 8 U.S.C. § 1227(a)(2)(E)(i).
In Esquivel-Quintana the Supreme Court interpreted 8 U.S.C. § 1101(a)(43)(A), which covers the aggravated felony offense of "sexual abuse of a minor."
*615 Esquivel-Quintana , 137 S. Ct. at 1567. The issue in that case was whether state statutory rape laws that defined a "minor" as a person under the age of eighteen fell within the INA's definition of sexual abuse of a minor. Id. at 1568.[5] The Supreme Court held that they did not because the federal generic age of consent in 1996 (when this INA provision was enacted) was sixteen. Id. at 1569-72. The Supreme Court looked to several different sources in reaching this conclusion. First, the structure of the INA-specifically, the fact that the sexual abuse of a minor offense was designated an "aggravated felony" and placed "in the same subparagraph as murder and rape"-"suggest[ed] that sexual abuse of a minor encompasses only especially egregious felonies." Id. at 1570 (internal quotation marks and citations omitted). Second, another provision of federal law, 18 U.S.C. § 2243, that criminalized "sexual abuse of a minor or ward," was limited to victims under age sixteen. Id. at 1570-71. The Court found it especially instructive that Congress enacted 18 U.S.C. § 2243 "in the same omnibus law that added sexual abuse of a minor to the INA." Id. (citing Omnibus Consolidated Appropriations Act, 1997, §§ 121(7), 321, 110 Stat. 3009-31, 3009-627). Third, the Court "look[ed] to state criminal codes for additional evidence about the generic meaning of sexual abuse of a minor," and found that "[a] significant majority of jurisdictions thus set the age of consent at 16 for statutory rape offenses predicated exclusively on the age of the participants." Id. at 1571. The Court only briefly addressed Chevron deference at the end of its decision. Id. at 1572. The Government urged that any ambiguity in the statute should be resolved in its favor under Chevron , while Esquivel-Quintana had argued that any ambiguity should be construed in his favor under the rule of lenity. Id. The Court stated that there was "no need to resolve whether the rule of lenity or Chevron receives priority in this case because the statute, read in context, unambiguously forecloses the Board's interpretation. Therefore, neither the rule of lenity nor Chevron applies." Id.
In Esquivel-Quintana , the Supreme Court did not reject Chevron outright or mandate any particular approach to statutory interpretation. At most, the Supreme Court's decision reminds courts to use all available tools of statutory construction in order to discern Congress's intent before concluding that a statutory term is ambiguous and deferring to the implementing agency's interpretation. Cf. Chevron , 467 U.S. at 842, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter."); Mizrahi , 492 F.3d at 158 ("If the statutory language is ambiguous, ... we resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history, to see if these interpretive clues clearly reveal Congress's intent." (internal quotation marks, citations, and brackets omitted)).[6] Because the Supreme *616 Court's holding in Esquivel-Quintana was narrow and its decision did not relate to the INA's crime of child abuse provision or mandate any particular approach to statutory interpretation, it does not cast doubt on Florez .[7] Cf. Correa-Diaz v. Sessions , 881 F.3d 523, 528 (7th Cir.), cert. denied , --- U.S. ----, 139 S. Ct. 224, 202 L.Ed.2d 152 (2018) ("[W]e do not believe Esquivel-Quintana 's limited holding overruled all of this Court's previous decisions deferring to [the] BIA's interpretation of 'sexual abuse of a minor.' "). We conclude that Florez remains binding, and for this reason, we continue to defer to the BIA's definition of crime of child abuse, neglect, or abandonment as including child endangerment offenses that pose a sufficiently high level of risk of harm to a child. The next question is whether New York's child endangerment law fits within that definition.
B. The Categorical Approach
As noted above, the BIA and federal courts agree that state child endangerment statutes must require something more than a mere possibility of nonserious harm to qualify as a crime of child abuse, neglect, or abandonment under the INA. See Florez , 779 F.3d at 212 (noting that the BIA's definition "is not unlimited" and "requires, as an element of the crime, a sufficiently high risk of harm to a child"); Fregozo , 576 F.3d at 1037-38 (holding that California's misdemeanor child endangerment statute was not a crime of child abuse under the INA because it did not require "any particular likelihood of harm to a child"); Mendoza Osorio , 26 I. & N. Dec. at 711 (discussing California statute and agreeing that it is not categorically a crime of child abuse). The next issue, then, is whether New York's child endangerment law requires a level of risk of harm to a child that is significant enough to qualify as a crime of child abuse, neglect, or abandonment under the INA.[8]
In determining whether NYPL § 260.10(1) is a crime of child abuse, we employ the "categorical approach," looking only to the text of NYPL § 260.10(1) and New York's interpretation of that statute to determine whether there is a categorical match with the BIA's definition. Florez , 779 F.3d at 209-10. We use the categorical approach whenever the relevant INA provision "makes aliens removable based on the nature of their convictions, not based on their actual conduct." Esquivel-Quintana , 137 S. Ct. at 1567-68. The child abuse *617 provision, 8 U.S.C. § 1227(a)(2)(E)(i), like several other provisions of the INA, "premises removability not on what an alien has done, or may have done, or is likely to do in the future (tempting as it may be to consider those factors), but on what he or she has been formally convicted of in a court of law." Gertsenshteyn , 544 F.3d at 145 ; see also Velazquez-Herrera , 24 I. & N. Dec. at 513 (discussing BIA's application of the categorical approach to § 1227(a)(2)(E)(i) ).
Under this categorical approach, "[a]n alien's actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." Mellouli v. Lynch , --- U.S. ----, 135 S. Ct. 1980, 1986, 192 L.Ed.2d 60 (2015) (quoting Moncrieffe v. Holder , 569 U.S. 184, 190-91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) ). We must identify the least culpable conduct that is punishable under NYPL § 260.10(1) and determine whether that conduct falls within the BIA's definition of a crime of child abuse, neglect, or abandonment. However, the Supreme Court has cautioned that the categorical approach's "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [federal] definition of a crime.' " Moncrieffe , 569 U.S. at 191, 133 S.Ct. 1678 (quoting Gonzales v. Duenas-Alvarez , 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) ); see also United States v. Hill , 890 F.3d 51, 59 (2d Cir. 2018).
The Supreme Court first announced the realistic probability standard in 2007 in Duenas-Alvarez , 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683. Duenas-Alvarez argued that his state statute of conviction criminalized acts outside the generic definition and thus was not categorically a removable theft offense. Id. at 190-94, 127 S.Ct. 815. In rejecting this argument, the Court shifted the burden of proof from the Government to Duenas-Alvarez to demonstrate that, despite the apparent categorical match between the state statute and the generic federal definition of theft, there was a realistic probability that the state would apply the state statute to conduct outside the generic definition. Id. at 193, 127 S.Ct. 815.
In Moncrieffe , the Supreme Court again referenced the "realistic probability" component of the categorical approach. 569 U.S. at 206, 133 S.Ct. 1678. The Court held that a Georgia statute criminalizing possession with intent to distribute marijuana was not categorically an aggravated felony drug trafficking offense because it criminalized conduct that was punishable as a misdemeanor as well as a felony under federal law. More specifically, the Georgia statute made it a crime, inter alia , to possess with intent to distribute small amounts of marijuana, while federal law required a sale for the crime to qualify as a felony. Id. at 193-95, 133 S.Ct. 1678. The Government argued that the Court's holding would "frustrate the enforcement of other aggravated felony provisions, like § 1101(a)(43)(C), which refers to a federal firearms statute that contains an exception for 'antique firearms.' " Id. at 205, 133 S.Ct. 1678. The Court rejected the Government's argument, stating that, given that " Duenas-Alvarez requires that there be 'a realistic probability ... that the State would apply its statute to conduct that falls outside the generic definition of a crime[,]' [t]o defeat the categorical comparison in this manner, a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving *618 antique firearms." Id. at 205-06, 133 S.Ct. 1678 (internal citation omitted).
Other than in Duenas-Alvarez and Moncrieffe , the Supreme Court has not expanded or again discussed the "realistic probability" approach in the context of determining removability. Importantly, the Supreme Court has not yet "specif[ied] what type of evidence may be used to satisfy the 'realistic probability' requirement." Nicanor-Romero v. Mukasey , 523 F.3d 992, 1005 (9th Cir. 2008), overruled on other grounds by Marmolejo-Campos v. Holder , 558 F.3d 903 (9th Cir. 2009) ; see also Jean-Louis v. Att'y Gen. , 582 F.3d 462, 481-82 (3d Cir. 2009). Although it is the Government's burden to prove removability by clear and convincing evidence, 8 U.S.C. § 1229a(c)(3)(A) ; Woodby v. INS , 385 U.S. 276, 277, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), Moncrieffe and Duenas-Alvarez suggest that it is a noncitizen's burden to establish a realistic probability of being convicted for conduct outside the federal definition, at least in cases where the state and federal statutes appear to be a categorical match. See also Hylton v. Sessions , 897 F.3d 57, 63 (2d Cir. 2018) (concluding that the BIA erred in applying "realistic probability" test where statutes were not a categorical match, but explaining that where there is a match, the noncitizen can "show a 'realistic probability' that 'the State would apply its statute to conduct that falls outside the generic definition of a crime.' " (quoting Duenas-Alvarez , 549 U.S. at 193, 127 S.Ct. 815 )). Because we conclude, as set forth below, that the state and federal statutes are a categorical match, Matthews has the burden to show that New York applies NYPL § 260.10(1) to conduct that falls outside the BIA's definition of a crime of child abuse.
C. The BIA's Definition of a Crime of Child Abuse is a Categorial Match with NYPL § 260.10(1)
Section 260.10(1) criminalizes, as relevant here, "knowingly act[ing] in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old." New York defines the requisite mens rea , "knowingly," as follows: "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." NYPL § 15.05(2). "Likely" is defined as "probable," "showing a strong tendency," or "reasonably expected." Black's Law Dictionary (10th ed. 2014). The New York Court of Appeals has interpreted NYPL § 260.10(1) as requiring both that the defendant acted "with an awareness of the potential for harm" and "that the harm was likely to occur, and not merely possible." People v. Hitchcock , 98 N.Y.2d 586, 590-91, 750 N.Y.S.2d 580, 780 N.E.2d 181 (2002) (emphasis added); see also People v. Johnson , 95 N.Y.2d 368, 372, 718 N.Y.S.2d 1, 740 N.E.2d 1075 (2000) ("The Legislature specifically recognized that behavior that was likely to produce harm to a child's physical, mental or moral well-being fell within its sweep as long as the defendant was aware of its potential for harm to a child."); People v. Simmons , 92 N.Y.2d 829, 830, 677 N.Y.S.2d 58, 699 N.E.2d 417 (1998) ("Actual harm to the child need not result for liability under the statute to attach, it being sufficient that the defendant act in a manner which is likely to result in harm to the child, knowing of the likelihood of such harm coming to the child.").
The case law illustrates that although the question of whether a defendant's conduct is likely to harm a child is highly "fact specific," evidence of likely harm is required to convict a defendant under *619 NYPL § 260.10(1). Johnson , 95 N.Y.2d at 373, 718 N.Y.S.2d 1, 740 N.E.2d 1075. In Johnson , the Court of Appeals cited "social science and psychological studies," noting "the profound adverse effect on children who witness domestic violence." Id. at 372, n.*, 718 N.Y.S.2d 1, 740 N.E.2d 1075.
In People v. Simmons , the defendant was charged with "repeatedly directing vulgar remarks of a sexual nature" to a child roughly two years old. 92 N.Y.2d at 830, 677 N.Y.S.2d 58, 699 N.E.2d 417. The New York Court of Appeals recognized that the "child was in the formative stages of speech and learning, had some verbal cognitive abilities and in fact reacted to defendant's vulgar queries, by answering 'yes.' " Id. Under these circumstances, "[t]he jury therefore may reasonably have concluded that the totality of defendant's remarks, repeated to the child over a six-week period at a crucial stage in her intellectual and social development, would have combined to create a likelihood of harm , regardless of the child's current level of understanding." Id. at 831, 677 N.Y.S.2d 58, 699 N.E.2d 417 (emphasis added). The court recognized that jurors could "draw[ ] upon their common human experience and commonsense understanding of the nature of children" to conclude that the defendant's "remarks were likely to have caused the child harm." Id. (emphasis added). Our own jurisprudence similarly allows jurors to rely on common sense and experience to draw inferences such as whether a defendant acted with criminal intent. See United States v. Anderson , 747 F.3d 51, 70 (2d Cir. 2014) ("[A]lthough the government is not permitted to build a conviction on a house of cards, neither is a jury required to leave its common sense at the courthouse door: 'Jurors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences.' " (quoting United States v. Huezo , 546 F.3d 174, 182 (2d Cir. 2008) ).
New York appellate courts have reversed NYPL § 260.10(1) convictions after finding insufficient evidence or improper instructions regarding either a defendant's knowledge or an actual likelihood of physical, mental, or moral harm to a child. See People v. Hosue , 56 N.Y.S.3d 764, 767-68, 56 Misc.3d 51 (2d Dep't 2017) (weight of evidence was against guilty verdict for attempted child endangerment where defendant pushed his seven-year-old daughter's mother during an altercation but "[t]here was no evidence of a history of domestic violence between the parties"); People v. Coveney , 21 N.Y.S.3d 523, 528-29, 50 Misc.3d 1 (2d Dep't 2015) (vacating child endangerment conviction because there was no evidence of any nexus between defendants' conduct and a likelihood of harm to the complainant's children); People v. Chase , 186 Misc.2d 487, 720 N.Y.S.2d 707, 709 (2d Dep't 2000) (requiring a "true likelihood of injury which is not 'speculative' " and finding that the specific circumstances of defendant's driving while intoxicated did not establish either a likelihood of harm or defendant's knowledge beyond a reasonable doubt); People v. Simmons , 221 A.D.2d 994, 635 N.Y.S.2d 373, 374 (4th Dep't 1995) ("Because the degree of culpability required by the statute is actual knowledge, it was reversible error to charge the jury that it could find defendant guilty based upon what he should have known.").
As the BIA discussed in Mendoza Osorio , 26 I. & N. Dec. at 707 n.3, New York criminal courts have also dismissed child endangerment charges as legally insufficient in cases where the prosecution failed to allege a sufficient, non-speculative risk of injury to a child. See People v. Ventura , 7 Misc.3d 1002A, 801 N.Y.S.2d 241, 2005 WL 735873, at *2 (Crim. Ct. 2005) (dismissing complaint as facially insufficient because defendant's act of taking another's *620 cell phone and throwing it against a wall did not "pose[ ] a likelihood of either physical or mental harm to the eleven and fourteen year-olds present"); People v. Grajales , 179 Misc.2d 793, 686 N.Y.S.2d 608, 610 (Crim. Ct. 1999) (dismissing child endangerment counts for marijuana possession because "the potential harm to the child cannot be merely remote or speculative in nature").
This is not a situation, therefore, in which the state statute, on its face, stretches further than the BIA's definition; instead, the state statute and the BIA's definition appear to be a categorical match.[9] Compare Mendoza Osorio , 26 I. & N. Dec. at 706 ("These elements-a knowing mental state coupled with an act or acts creating a likelihood of harm to a child-fit within our definition of a 'crime of child abuse, child neglect, or child abandonment.' "), with Mathis v. United States , --- U.S. ----, 136 S. Ct. 2243, 2251, 195 L.Ed.2d 604 (2016) ("[T]he elements of Mathis's crime of conviction ... cover a greater swath of conduct than the elements of the relevant [federal] offense .... Under our precedents, that undisputed disparity resolves this case."), and Hylton , 897 F.3d at 63 ("[T]he statutory language itself ... creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." (quoting Ramos v. U.S. Att'y Gen. , 709 F.3d 1066, 1072 (11th Cir. 2013) ).
D. Matthews Has Not Demonstrated a Realistic Probability that the Statute is Applied More Broadly than the BIA's Definition
Where a statute is not facially overbroad, the realistic probability approach requires a noncitizen to demonstrate "that the State actually prosecutes the relevant offense in cases" that fall outside the federal definition. Moncrieffe , 569 U.S. at 206, 133 S.Ct. 1678. Matthews must "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Duenas-Alvarez , 549 U.S. at 193, 127 S.Ct. 815.
Matthews does not argue that the facts underlying his convictions do not match the BIA's definition of a crime of child abuse. Rather, he argues that New York courts have imposed liability for child endangerment in situations that may be illustrative of "bad parenting" or other "minor missteps," but do not actually pose a likelihood of physical, mental, or moral harm to a child. Petitioner's Br. at 50. He points to two categories of cases: "home alone" cases and cases involving the commission of criminal activity, such as controlled substance use or possession, in the presence of children.
For the "home alone" cases, Matthews and the dissent cite People v. Reyes , in which a New York criminal court denied a defendant's motion to dismiss a child endangerment charge as facially insufficient. 20 Misc.3d 1129A, 872 N.Y.S.2d 692, 2008 WL 3010044 (Crim. Ct. Aug. 6, 2008) ; see N.Y. Crim Proc. Law § 100.40(4)(b) (providing that a misdemeanor complaint is sufficient on its face when its factual allegations "provide reasonable cause to believe that the defendant committed the offense charged."). In Reyes , the complaint alleged that a mother left her four-year-old *621 child home alone for about fifteen minutes in order to get groceries; although the mother stated that the child was asleep when she left and she remained within earshot, the police officer who found the child stated that the child was awake and opened the door for the officers, who were strangers to the child. 2008 WL 3010044, at *1-2, 20 Misc.3d 1129(A), 872 N.Y.S.2d 692. The court determined that the allegations in the complaint made out a sufficient likelihood of harm, citing to a case where a four-year-old started a fire when left home alone for about ten minutes, and concluded that factual issues such as whether the child was asleep and whether the defendant remained within earshot were better left for trial. Id. at *3 & n.1. The court stated:
We hold that the issue of whether there is some minimum time that a child must be left alone in order to hold a defendant liable under PL § 260.10(1) is ill-suited for resolution on a motion to dismiss for facial insufficiency. Among the factors which would appear appropriate for consideration are the age of the child, the length of time involved, the maturity of the particular child, and the reason why the child was left alone.
Id. at *1. If the case proceeded to trial, the prosecution would have been put to its burden to convince a jury that the defendant's conduct resulted in a likelihood of harm to her child and that the defendant knew that her conduct was likely to result in injury to her child. Reyes and other "home alone" cases illustrate that New York courts are cognizant of the line between "bad parenting" and child endangerment, and provide prosecutors and juries with guideposts for determining when the factual circumstances of a case establish culpability under NYPL § 260.10(1).[10]
The dissent, by contrast, highlights Reyes and other decisions in which New York trial courts upheld the sufficiency of criminal misdemeanor complaints brought under Section 260.10(1) for the proposition that the state courts are applying the statute inconsistently and, accordingly, more broadly than the federal definition. While we appreciate the dissent's concern that some statements by trial courts may not correctly interpret the state statute, there is no question that the statute, as interpreted by the New York Court of Appeals, is a categorical match with the BIA's definition, and there is no New York appellate decision cited by the dissent that has upheld a conviction that sweeps more broadly than the BIA definition.
*622 The dissent notes correctly that the Supreme Court has yet to articulate the contours of the "realistic probability" test to argue that our analysis is not so limited, but it is for this precise reason that we find ourselves constrained from reading these cases as contravening the interpretation espoused by New York's highest court.[11]
For similar reasons, we decline to rely upon charging documents to alter our analysis. Amici have submitted several redacted arrest reports, complaints, and misdemeanor informations that charge defendants with violating NYPL § 260.10(1) for conduct such as: driving with a suspended license with a child in the car, shoplifting while caring for an infant or toddler, leaving a nine-year-old and sleeping five-year-old in a car for ten minutes with the windows open, yelling and knocking items from a shelf in the presence of two children, and smoking marijuana in a public playground while children are playing. Matthews, amici, and the dissent argue that these charging documents show a realistic probability that New York prosecutes conduct that only poses a minimal risk of harm to children.
The Government does not contest the authenticity of these documents, although in Matthews's case the IJ and BIA relied on Mendoza Osorio , a precedential case in which the BIA refused to consider charging documents without proof of a subsequent conviction, reasoning that "a judge or jury may have found that the facts as charged were insufficient to support a conviction." 26 I. & N. Dec. at 707 n.4. The fact that Matthews did not submit these documents to the IJ or BIA prevents us from reviewing them because in the immigration context, we are strictly constrained to the administrative record. 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").[12]
Even if we could consider these charging documents, we are not convinced that they would change the outcome of this case. On the one hand, we recognize the concern expressed by Matthews, amici, and the dissent that prosecutors may be overcharging conduct under the child endangerment statute, and that the vast majority *623 of child endangerment charges result in guilty pleas and minimal sentences. The dissent argues that we can consider these charging documents, in combination with a high incidence of guilty pleas, to infer that defendants are pleading guilty to charges that are broader than the BIA's definition. Amici, however, have not submitted any evidence that these charging documents led to convictions (whether through guilty pleas or trial), or that any court upheld the allegations in these documents as facially sufficient. Without specific evidence linking charging documents to guilty pleas, we have no way of knowing the circumstances of the individual offenses that caused the prosecutors to bring the charges or the defendants to plead to those charges. Moreover, this is not a situation where we are without guidance because, as we have previously explained, New York's highest court has clarified the least-acts-criminalized by NYPL § 260.10(1) and requires a likelihood of harm to a child to support a conviction. For this reason, we agree with the BIA's decision in Mendoza Osorio and conclude that the charging documents and the cases Matthews and the dissent point to are not enough to show a realistic probability that NYPL § 260.10(1) covers conduct that falls outside the BIA's definition of a crime of child abuse.[13]
CONCLUSION
Because we hold that NYPL § 260.10(1) is a categorical match with the BIA's definition of "crime of child abuse," to which we owe Chevron deference, and because Matthews has not established a realistic probability that the statute encompasses conduct that stretches further than the BIA's definition, we DENY the petition for review.

Matthews also has a 1995 conviction for third-degree assault under NYPL § 120.00, for which he was sentenced to three years' probation. This conviction was not charged as a basis for removal.

Under Chevron , courts ask, first, whether a statute is ambiguous. If it is not ambiguous, courts must apply the statute's clear meaning. Second, if the statute is ambiguous, courts defer to a permissible interpretation of the statute by the administrative agency responsible for its enforcement. 467 U.S. at 842-43, 104 S.Ct. 2778.

In an unpublished decision that pre-dated Soram , we expressed skepticism about whether NYPL § 260.10(1) was a crime of child abuse, but we remanded for the BIA to define a "crime of child abuse" in the first instance. Guzman v. Holder , 340 F. App'x 679 (2d Cir. 2009) (summary order).

Esquivel-Quintana had pleaded no contest to a California statute criminalizing "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator" and defining a "minor" as "a person under the age of 18 years." 137 S. Ct. at 1567 (quoting Cal. Penal Code § 261.5(c) ). Thus, the minimum conduct criminalized under this statute would have been consensual sexual intercourse between a seventeen-year-old and a twenty-one-year-old. Id.

A June 2018 Supreme Court decision analyzing a different INA provision also concluded that "the Court need not resort to Chevron deference" if "Congress has supplied a clear and unambiguous answer to the interpretive question at hand." Pereira v. Sessions , --- U.S. ----, 138 S. Ct. 2105, 2113, 201 L.Ed.2d 433 (2018). Justice Kennedy's concurrence expressed concern that the decisions by the Courts of Appeals on that issue were too quick to defer to the BIA under Chevron , and were engaging in a "cursory analysis" rather than using ordinary tools of statutory construction to discern Congress's intent. 138 S. Ct. at 2120 (Kennedy, J., concurring). Justice Kennedy suggested that the Supreme Court "reconsider, in an appropriate case, the premises that underlie Chevron and how courts have implemented that decision." Id. at 2121. However, in the absence of such reconsideration, we remain bound by Chevron.

Matthews overemphasizes Esquivel-Quintana 's survey of state criminal statutes, which was only one of several sources the Supreme Court looked to in that case. See 137 S. Ct. at 1571 n.3 (agreeing with the Government that "this sort of multijurisdictional analysis" is not required and stating that "[i]n this case, state criminal codes aid our interpretation of 'sexual abuse of a minor' by offering useful context."). Because the INA's crime of child abuse provision is not an aggravated felony (a designation that carries serious consequences such as barring most forms of relief from removal), and there is no other provision of federal law that defines a crime of child abuse, a significant part of Esquivel-Quintana 's statutory analysis is inapplicable to this case.

We review the BIA's interpretation of NYPL § 260.10(1) de novo , without according Chevron deference, because state criminal law falls outside the BIA's area of expertise. See Gill v. INS , 420 F.3d 82, 89 (2d Cir. 2005).

To the extent that Matthews takes issue with New York's inclusion of "moral harm" against children, we note that the BIA's definition also encompasses "convictions for offenses involving ... mental or emotional harm, including acts injurious to morals." Velazquez-Herrera , 24 I. & N. Dec. at 512.

Similarly, although New York criminal courts are somewhat divided on whether the possession and use of marijuana and other controlled substances pose a sufficient risk of harm to qualify as child endangerment, the cases distinguish between situations in which children are actually exposed to controlled substances, and those in which the defendant made an effort to hide or conceal the illicit substances. Compare Grajales , 686 N.Y.S.2d at 609-10 (dismissing endangerment charges on the basis that "the mere presence of mari[j]uana alone" in an apartment with children present is not enough to show a likelihood of harm), with People v. Kennedy , 75 A.D.3d 766, 904 N.Y.S.2d 577, 579 3rd Dep't 2010) (affirming child endangerment conviction based on teenage daughters' repeated exposure to cocaine residue and paraphernalia in defendant's home). Matthews, moreover, has not identified any case involving an actual child endangerment conviction that was based upon an overbroad application of the statute to conduct involving the use or possession of a controlled substance. The only controlled substance case he relies on involved a trial court's denial of a motion to dismiss. See People v. Alvarez , 20 Misc.3d 606, 860 N.Y.S.2d 745 (Crim. Ct. 2008). In Alvarez , the court relied on the "strong odor of mari[j]uana throughout the apartment," which implied that the defendant had been smoking marijuana while the children were present, as an aggravating factor that distinguished the case from others involving the mere possession of marijuana. Id. at 747-49.

In Armed Career Criminal Act ("ACCA") cases, moreover, which also employ the categorical approach and realistic probability test, the Supreme Court and other Courts of Appeals have recognized that federal courts are bound by the highest state court's interpretations of state law. See Johnson v. United States , 559 U.S. 133, 138, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (holding that although the meaning of ACCA's requirement of "physical force" is a question of federal law, the Court was "bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of" the Florida battery statute at issue); United States v. Holloway , 630 F.3d 252, 259-60 (1st Cir. 2011) (citing Johnson for the same proposition); see also United States v. Southers , 866 F.3d 364, 368 (6th Cir. 2017) (rejecting notion that defendant's reliance on Tennessee intermediate appellate court decisions could satisfy "realistic probability" test to the extent that those "decisions appl[ied] the Tennessee robbery statute in a manner ... inconsistent with Tennessee Supreme Court precedent.").

We have taken judicial notice of material and undisputed changes in country conditions that occur between the BIA's decision and our review, see Hoxhallari v. Gonzales , 468 F.3d 179, 185 n.5 (2d Cir. 2006) (per curiam ), but that exception does not apply here. And Matthews and amici have not provided any information about the court proceedings in which these arrest reports and misdemeanor charges were filed, such that we might take judicial notice of those proceedings. Cf. Kramer v. Time Warner Inc. , 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... to establish the fact of such litigation and related filings.").

The dissent would grant Matthews's petition on the additional and independent ground that the BIA's current definition of "child abuse" cannot be applied retroactively to Matthews's 2002 and 2003 state convictions. Counsel, however, has not raised this issue, and we therefore do not reach it. Nor do we foreclose the possibility that another petitioner might challenge an order of removal premised on convictions that predated the BIA's contemporaneous definition in a proper case.
Similarly, although we appreciate the policy concerns that Matthews, amici, and the dissent have thoughtfully highlighted-such as the risk of separating families or disqualifying domestic violence victims from obtaining immigration relief-these concerns are not present in Matthews's case, and he has not presented evidence that such concerns have materialized in the context of New York's child endangerment law.