# Matter of Henry Javier MENDOZA OSORIO, Respondent

*Decided February 9, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of endangering the welfare of a child in violation of section 260.10(1) of the New York Penal Law, which requires knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of a child, is categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2012).

FOR RESPONDENT: Xavier A. Palacios, Esquire, Mineola, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Mele Moreno, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, MULLANE, and MANN, Board Members.

MALPHRUS, Board Member:

In a decision dated April 14, 2015, an Immigration Judge ordered the respondent removed from the United States.[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Ecuador and a lawful permanent resident of the United States. The record reflects that he was convicted on December 10, 2013, of endangering the welfare of a child in violation of section 260.10(1) of the New York Penal Law. On the basis of that conviction, the Department of Homeland Security ("DHS") charged the respondent with removability under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2012), as an alien convicted of a "crime of child abuse, child neglect, or child abandonment." The Immigration Judge found that the respondent is removable as charged and that he did not seek any relief from removal.

---

[1] The Immigration Judge also noted that the respondent's removability was previously determined in an order dated March 31, 2015, which was incorporated by reference.

## II.  ANALYSIS

The respondent only contests the Immigration Judge's finding of removability, arguing that the offense of endangering the welfare of a child in violation of section 260.10(1) of the New York Penal Law is not categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act.  Specifically, he asserts that the crime defined in section 260.10(1) is broader than the definition of child abuse that we have previously articulated.  We review this question of law de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2015).

As we first stated in *Matter of Velazquez-Herrera*, 24 I&N Dec. 503 (BIA 2008),

> [we] interpret the term "crime of child abuse" broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent *act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being*, including sexual abuse or exploitation.  At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.

*Id.* at 512 (emphasis added).  In *Matter of Soram*, 25 I&N Dec. 378, 381 (BIA 2010), we further clarified that the term "crime of child abuse" is not limited to offenses that require proof of actual harm or injury to a child and that crimes of child neglect and abandonment are included in our definition of child abuse.  In addition, we determined that because States use a variety of terms to describe the degree of threat required under endangerment-type offenses, "a State-by-State analysis is appropriate to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of 'child abuse' under the Act."  *Id.* at 381−83.

The United States Court of Appeals for the Second Circuit, in whose jurisdiction this case arises, held that our precedent decisions provided a reasonable interpretation of a statutory ambiguity and accorded them deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *Florez v. Holder*, 779 F.3d 207, 209, 211−14 (2d Cir. 2015), *petition for cert. filed sub nom. Florez v. Lynch*, 84 U.S.L.W. 3280, 2015 WL 6774583 (U.S. Nov. 5, 2015) (No. 15-590); *accord Hackshaw v. Att'y Gen. of U.S.*, 458 F. App'x 137 (3d Cir. 2012);

*Martinez v. U.S. Att'y Gen.*, 413 F. App'x 163 (11th Cir. 2011). *But see Ibarra v. Holder*, 736 F.3d 903 (10th Cir. 2013). The alien in *Florez*, who was also convicted under section 260.10(1), conceded that our definition of the phrase "crime of child abuse" was sufficiently broad to encompass a violation of that section. Therefore the court did not reach the question whether such a violation is categorically a "crime of child abuse, child neglect, or child abandonment." *Florez v. Holder*, 779 F.3d at 209−10. Because this issue has been raised by the respondent, we address it here.

Section 260.10(1) of the New York Penal Law provides:

> A person is guilty of endangering the welfare of a child when:
>
> 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health . . . .

Although contained in a single sentence, section 260.10(1) is phrased in the disjunctive and defines two discrete offenses: (1) taking action that is likely to be harmful to a child's welfare, and (2) allowing a child to work in a dangerous occupation. *See Florez v. Holder*, 779 F.3d at 210 (stating that section 260.10(1) "can be violated in two conceptually distinct ways"); *United States v. Beardsley*, 691 F.3d 252, 268 n.11 (2d Cir. 2012) (noting that "the statute does create two offenses").

The respondent has not claimed that he was convicted of the second part of section 260.10(1) or specifically explained how conduct punished under that part of the statute would fall outside of our definition of a crime of child abuse. Furthermore, he has not cited to any reported decision where a defendant was convicted under that part of the statute, and we are unaware of any decisions that explicitly discuss this aspect of section 260.10(1). Under these circumstances, we are unpersuaded that the offense of directing a child to engage in an occupation that involves a substantial risk of injury or illness does not define a categorical crime of child abuse or neglect. We therefore focus our inquiry on the first offense in the statute.

In employing the categorical approach to determine if a State crime is comparable to a removable offense under the Act, we look to whether the State statute defining the crime categorically fits within the Federal definition of the corresponding offense. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). The respondent argues that the offense of endangering the welfare of a child under section 260.10(1) is not categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act because the New York statute is so

broad that it encompasses conduct that falls outside of that phrase, as it was defined in *Matter of Soram* and *Matter of Velazquez-Herrera*.

However, to establish that the New York offense is not a categorical crime of child abuse, the respondent must do more than merely invoke the statute's breadth in general terms. He must show that there is a "realistic probability" that the statute is, in fact, applied to punish conduct that does not qualify as child abuse under the Act. *See Moncrieffe v. Holder*, 133 S. Ct. at 1684−85 (stating that the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense" and that "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'" (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007))).[2]

A conviction for endangering the welfare of a child under the first part of section 260.10(1) requires a showing that the defendant knew that his actions were likely to result in physical, mental, or moral harm to a child. *People v. Portorreal*, 939 N.Y.S.2d 805, 809 (N.Y. Crim. Ct. 2009). To act "knowingly" under New York law, the defendant must have been "aware" of the nature of his conduct and of the fact that his actions had the potential for harm. *See People v. Johnson*, 740 N.E.2d 1075, 1076 (N.Y. 2000); *see also People v. Simmons*, 635 N.Y.S.2d. 373 (N.Y. App. Div. 1995) (holding that it was error to convict based on what the defendant "should have known" because section 260.10(1) requires "actual knowledge"). There must also be proof that the harm was "likely to occur, and not merely possible." *People v. Hitchcock*, 780 N.E.2d 181, 183 (N.Y. 2002).

These elements—a knowing mental state coupled with an act or acts creating a likelihood of harm to a child—fit within our definition of a "crime of child abuse, child neglect, or child abandonment" in section 237(a)(2)(E)(i) of the Act. However, the respondent argues that the New York statute is overly broad because it proscribes a wide range of conduct that is not specifically delineated, claiming that it therefore criminalizes actions that were not contemplated to be child abuse or neglect under the Act. We disagree.

---

[2] This realistic probability standard, which has been applied by the Supreme Court to determine whether an alien's conviction was for an "elements-based" aggravated felony under the Act, also applies in the context of removability under section 237(a)(2)(E)(i) of the Act. *See Matter of Francisco-Alonzo*, 26 I&N Dec. 594, 599 (BIA 2015) (stating that pursuant to *Moncrieffe*, in the context of the "broadly descriptive class of offenses in the Act, such as 'sexual abuse of a minor,'" we now "'look only to the minimum conduct that has a realistic probability of being prosecuted' under the State statute" (quoting *Matter of Esquivel-Quintana*, 26 I&N Dec. 469, 472 (BIA 2015), *aff'd*, *Esquivel-Quintana v. Lynch*, No. 15-3101, 2016 WL 192009 (6th Cir. Jan. 15, 2016))).

The respondent claims that various New York cases support his argument that section 260.10(1) criminalizes conduct that is not within our definition of child abuse because it does not constitute maltreatment of a child. He mentions leaving a child unattended for a short period, driving with a suspended license in the presence of a child, and committing petit larceny in the presence of a child, but he has not provided citations to any cases involving these circumstances. He did cite cases that he claims fall outside our definition, but none of them resulted in a successful prosecution because the defendant's conduct did not constitute endangering the welfare of a child under the New York statute.[3] Since there was no conviction in any of these cases, they are unpersuasive in establishing that there is a realistic probability that section 260.10(1) would be successfully applied to conduct outside our definition of child abuse.[4]

---

[3] *Farkas v. Barry*, 335 F. Supp. 681 (E.D.N.Y. 1972) (accepting assurances by the prosecuting attorney in a related case that section 260.10(1) is inapplicable to a parent bringing a minor child to a lecture on birth control); *People v. Kanciper*, 954 N.Y.S.2d 146 (N.Y. App. Div. 2012) (finding insufficient evidence to support a conviction where the defendant injected a dog with a tranquilizer in a child's presence, but the child, who was familiar with such medical treatments, was not upset by it and was unaware that it was in preparation to euthanize the dog); *People v. Campbell*, No. 570557/01, 2003 WL 1907680 (N.Y. App. Term Apr. 3, 2003) (vacating the conviction where there was no basis for the jury to conclude that the defendant created a likelihood of harm to children seated in a stationary vehicle when he spun his car wheels as he drove past them); *People v. Cruz*, 809 N.Y.S.2d 850 (N.Y. Crim. Ct. 2005) (finding a complaint to be facially insufficient where a mother left her infant son in the care of a responsible adult neighbor for about 20 hours); *People v. Smith*, 678 N.Y.S.2d 872 (N.Y. Crim. Ct. 1998) (granting a motion to dismiss as facially insufficient an accusatory instrument alleging that the defendant left four children between the ages of 5 and 13 home alone for 2 hours without adult supervision or food); *People v. Weyrick*, 287 N.Y.S.2d 715, 716 (N.Y. City Ct. 1968) (dismissing an information charging the defendant with having a beer party with minors present where nothing alleged that he "did anything to actually cause or permit the life or limb of the minors to be endangered"); *see also People v. Duenas*, 742 N.Y.S.2d 468 (N.Y. App. Term 2002), *aff'd sub nom. People v. Hitchcock*, 780 N.E.2d at 184 (holding that the evidence was legally insufficient to conclude that the defendant was aware that his conduct would likely be injurious to a child where he made a significant effort to conceal a handgun and was unaware that a child knew it was in the house).

[4] In arguing that there is a "realistic probability" that a defendant could be convicted for conduct that violates section 260.10(1) but that does not constitute a "crime of child abuse," the respondent has also submitted copies of redacted complaints and charging documents issued by the State of New York. We are not persuaded that a realistic probability of a successful prosecution may be shown by looking only to a charging document that did not necessarily result in a conviction. To be relevant to this inquiry, there must be more than just a charging document, because a judge or jury may have found that the facts as charged were insufficient to support a conviction.

*See Matter of Francisco-Alonzo*, 26 I&N Dec. 594, 601 (BIA 2015) (finding neither support for the contention that the State statute "could be successfully applied to conduct" outside the Federal definition of a crime of violence nor evidence of "any such successful prosecutions"); *Matter of Ferreira*, 26 I&N Dec. 415, 420 (BIA 2014) (finding no support for the contention that the State statute was "actually used to successfully prosecute" offenses involving antique firearms).

The fact that there are numerous reported cases finding the offender's conduct insufficient to support a conviction shows that the breadth of section 260.10(1) has significant limits. *People v. Hitchcock*, 780 N.E.2d 181, a case involving guns decided by the highest court of New York, illustrates that while section 260.10(1) potentially covers a broad range of conduct, acts that risk harm or actually result in harm to a child may still not meet the statute's threshold requirement that the offender knowingly acted in a manner likely to be harmful to a child's welfare.[5]

The case involved two defendants, Hitchcock and Duenas, both of whom were charged with endangering the welfare of a child following accidents in which one child used the defendant's gun to shoot another child. Hitchcock had 23 firearms in his home, including semiautomatic weapons and an assault rifle, most of which were openly accessible. At least one weapon was loaded, and ammunition for the others was nearby. Hitchcock testified that he had shown a 14-year-old living in his home how to load and shoot the guns and that he suspected they had been tampered with in his absence. The court took these facts into consideration in concluding that the evidence was legally sufficient to convict Hitchcock because it was reasonable for the jury to infer that he knowingly kept guns in a manner likely to be injurious to children living in or near his home.

In contrast, Duenas had only one gun in his home and had made a significant effort to conceal it. There was no evidence that anyone else in the household knew about the gun, and Duenas was unaware that his younger brother had secretly seen him cleaning it in his bedroom. In these circumstances, the court found that the evidence was legally insufficient to conclude that Duenas was aware that his conduct would likely be injurious to a child. Thus, although both defendants possessed handguns

---

[5] Other cases that illustrate limits on the reach of section 260.10(1) involve the possession of marijuana in the presence of children. *Compare People v. Alvarez*, 860 N.Y.S.2d 745, 749 (N.Y. Crim. Ct. 2008) (concluding that the factual allegations were facially sufficient where there was a reasonable inference from the strong, pervasive odor of marijuana in an apartment that it was recently used illegally in the presence of young children), *with People v. Grajales*, 686 N.Y.S.2d 608, 609 (N.Y. Crim. Ct. 1999) (granting a motion to dismiss, finding that merely having marijuana in an apartment with a child present was not sufficient to sustain the charges).

that resulted in harm to a child, Duenas' conduct did not meet the legal requirements for conviction under section 260.10(1). This case demonstrates that there are, in fact, significant limits to the sweep of the statute, contrary to the respondent's assertion.

Prior to our decision in *Matter of Soram*, the Second Circuit issued an unpublished opinion, noting that the statute was broad and remanding for us to clarify whether the minimal conduct encompassed by a conviction under section 260.10(1) constitutes a crime of child abuse or neglect. *Guzman v. Holder*, 340 F. App'x 679 (2d Cir. 2009). The court listed a number of New York cases, some of which the respondent has also cited. In our view, each of the cases cited in *Guzman* involved conduct that the defendant knew would pose a substantial risk of harm to a child in the totality of the circumstances and would therefore qualify as a crime of child abuse or neglect. *See, e.g.*, *People v. Manon*, 640 N.Y.S.2d 318 (N.Y. App. Div. 1996) (sustaining the conviction of a mother who kept her infant son in extremely unsanitary conditions without necessary medical attention, which resulted in his death from malnutrition and dehydration); *People v. Afia*, 843 N.Y.S.2d 906 (N.Y. Crim. Ct. 2007) (convicting a school minibus attendant who was responsible for the safety of special needs children and knowingly failed to check for sleeping students, as instructed, which left a 7-year-old passenger alone on the bus for several hours in an unfamiliar location miles away from school).[6]

---

[6] Other cases cited in *Guzman* involved pretrial motions to dismiss the charges as facially insufficient, asserting that the factual allegations did not provide reasonable cause to believe that the defendant committed the offenses charged. *See* N.Y. Crim. Proc. Law §§ 100.15, 100.40 (McKinney 2015). Under this standard, a guilty inference can be drawn based on the facts alleged and the reasonable inferences that logically flowed from them. *See People v. Deegan*, 509 N.E.2d 345 (N.Y. 1987) (stating that the legal context for a motion to dismiss concerns "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes" and whether "the Grand Jury could rationally have drawn the guilty inference"). We conclude that these cases also involved child abuse or neglect because serious, potentially harmful conduct was alleged, particularly when considering the reasonable inferences that could be drawn from the facts. *See, e.g.*, *People v. Ambers*, 840 N.Y.S.2d 533 (N.Y. Crim. Ct. 2007) (denying a motion to dismiss because it could be reasonably inferred from the factual allegations that the defendant knowingly permitted her children to live in a home so filled with garbage, rat feces, insects, and rotten food that it was likely to be injurious to their health); *People v. D'Ambrosia*, 746 N.Y.S.2d 556 (N.Y. Just. Ct. 2002) (finding that the allegations supported the charge where the defendant drove while intoxicated at a speed well over the limit, creating a serious risk of an accident that would likely result in injury to a child in the car); *People v. Suquisupa*, 637 N.Y.S.2d 302 (N.Y. Sup. Ct. 1996) (finding that allegations the defendant sold fireworks to an unsupervised 13-year-old child were sufficient to support the charge).

The respondent raises issues that were noted in *Guzman*, arguing that because section 260.10(1) does not require that there be any actual harm to a child or that the conduct be directed toward the child, the statute prohibits conduct that is broader than the Federal crime of child abuse defined by our precedent decisions. This argument is unavailing, however, because we addressed the question of harm subsequent to *Guzman* and held that our definition of child abuse is not limited to offenses that require proof of harm or injury to the child. *Matter of Soram*, 25 I&N Dec. at 381. Furthermore, the Second Circuit has approved our conclusion in this regard. *Florez v. Holder*, 779 F.3d at 212.

In *Florez*, the court noted that *Guzman* had questioned whether our definition of child abuse was broad enough to include child endangerment statutes like section 260.10(1), which criminalize conduct that did not actually harm a child. *Id.* at 211. The court observed that this definition is intentionally expansive, "consistent with the legislative purpose behind" section 237(a)(2)(E)(i) of the Act. *Id.* at 213. However, it explained that under *Soram*, the definition is not unlimited because "a state child-endangerment statute qualifies as a 'crime of child abuse' under the [Act] only if it requires, as an element of the crime, a sufficiently high *risk* of harm to a child." *Id.* at 212. The court upheld our definition because it includes the required level of risk of harm to a child, recognizing that this limitation ensures that our treatment of such statutes "remains within the realm of reason." *Id.*

Although *Florez* did not specifically address the issue of conduct that was not directed at a child, we have reviewed New York cases that involved defendants who were convicted under section 260.10(1) for committing acts that were not directed at a child. *See, e.g.*, *People v. Johnson*, 740 N.E.2d at 1075−76 (children witnessed the defendant knock their mother down in the street and drag her home, then listened to him beat and yell at her for 10 hours while she screamed); *People v. Meseck*, 860 N.Y.S.2d 263 (N.Y. App. Div. 2008) (children witnessed the defendant confine their mother for 4 hours while he yelled at her, called her names, and threatened to kill her with a baseball bat); *People v. Spickerman*, 762 N.Y.S.2d 470 (N.Y. App. Div. 2003) (children witnessed the defendant beat their mother, breaking her jaw and rupturing her eardrums); *People v. Brooks*, 705 N.Y.S.2d 349 (N.Y. App. Div. 2000) (defendant stabbed his estranged wife in the presence of their 3-year old son); *People v. Parr*, 548 N.Y.S.2d 121 (N.Y. App. Div. 1989) (defendant forcibly sodomized a 5-year-old child's mother in the child's presence). In these cases the defendant was aware of the presence of the child when he committed severe acts of violence against the child's mother. Witnessing such acts of domestic violence is likely to cause serious psychological and

developmental damage to children, even if they are not themselves subjected to physical abuse. *People v. Johnson*, 740 N.E.2d at 1077. Therefore, even though the defendant's conduct was not directed at a child, we would consider it to be child abuse within our definition, given the high risk of harm to the child.

We recognize that there are child endangerment statutes that do not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment under the Act. For example, the child endangerment statute at section 273a(b) of the California Penal Code criminalizes conduct that places a child "in a situation where his or her person or health *may* be endangered." (Emphasis added.) In *Fregozo v. Holder*, 576 F.3d 1030 (9th Cir. 2009), the Ninth Circuit held that this statute did not categorically define a "crime of child abuse" within the meaning of the Act. The court observed that the statute does not "require that the circumstances create any particular likelihood of harm to a child" and punishes "conduct that creates only the bare potential for nonserious harm to a child." *Id.* at 1037−38. In this regard, the court cited as an example of facts that did not meet our definition of child abuse the case of a parent "placing an unattended infant in the middle of a tall bed without a railing, even though the child was never injured." *Id.* Based on the facts as construed by the court, we would agree that they do not, alone, define a crime of child abuse or neglect.

A conviction under section 260.10(1) at issue here requires that the defendant "knowingly engaged in conduct likely to be injurious to a child." *People v. Hitchcock*, 780 N.E.2d at 184. In reviewing this statute, we have considered the totality of the circumstances presented in each case, rather than viewing certain facts in isolation.[7] The New York cases that resulted in a successful prosecution under the statute are those where the defendant

---

[7] For example, *Guzman* cited two cases involving children left alone by the defendants who sought to dismiss the charges of child endangerment under section 260.10(1). *People v. Watson*, 700 N.Y.S.2d 651, 655 (N.Y. Crim. Ct. 1999) (denying a motion to dismiss where a 7-year-old child was left alone for 2½ hours by a defendant entrusted with his care in a locked apartment in the Bronx where "a wide range of dangers" could befall the scared child); *People v. Cenat*, 671 N.Y.S.2d 578 (N.Y. Crim. Ct. 1997) (denying a motion to dismiss where a mother left her two young children unsupervised in a car on a New York City street for more than 2 hours). In these cases, there were aggravating circumstances that exacerbated the risk of harm to the child, including the child's young age, the location where the offense occurred, and the length of time the child was left alone. When viewed in the totality of the circumstances, particularly in the context of a pretrial motion to dismiss where it is appropriate to consider reasonable inferences that can be drawn from the facts alleged, these cases involve more than simply leaving a child alone for a short period of time.

had an awareness that his conduct posed a sufficiently high risk of harm to a child to qualify the offense as a crime of child abuse or neglect under section 237(a)(2)(E)(i) of the Act.  Thus, while there are child endangerment statutes that do not meet our definition, we conclude that section 260.10(1) is not one of them.

## III.  CONCLUSION

Having considered the respondent's arguments and the New York cases he cited, we are unable to agree that he has shown a "realistic probability" that section 260.10(1) would successfully be applied to conduct falling outside our definition of child abuse or neglect.  *Moncrieffe v. Holder*, 133 S. Ct. at 1693 (stating that an alien must "demonstrate that the State actually prosecutes the relevant offense" in cases outside the Federal definition).  The respondent has also not relied on his own case to show such a realistic probability, even though the record contains information regarding his conviction.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. at 193 (stating that an alien must "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues").  We therefore conclude that the crime of endangering the welfare of a child in violation of section 260.10(1) of the New York Penal Law is categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act.  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.