FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**May 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RAUL ALEJANDRO MARISCAL-
ORTIZ,

     Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

     Respondent.

No. 23-9552
(Petition for Review)

_____

### ORDER AND JUDGMENT*

_____

Before **HOLMES**, Chief Judge, **MATHESON**, and **EID**, Circuit Judges.

_____

Raul Alejandro Mariscal Ortiz petitions for review of the Board of Immigration

Appeals's ("BIA") decision affirming an immigration judge's ("IJ") rulings (1) denying a

continuance to brief why his removal should be cancelled and (2) denying cancellation of

removal based on his Utah conviction for child abuse.  Exercising jurisdiction under

8 U.S.C. § 1252, we deny the petition.

---

\* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A.  *Factual History*

Mr. Mariscal, a native and citizen of Mexico, unlawfully entered the United States, where he has been convicted of several crimes.  Two are relevant here.  In 2007, he pled guilty to simple assault under Utah Code Ann. § 76-5-102 in a "case involv[ing] domestic violence."  AR, Vol. 2 at 629; *see id.* at 629-31.  In 2016, he pled no contest to class B misdemeanor child abuse in violation of Utah Code Ann. § 76-5-109(3)(b).[1]

In 2018, the Department of Homeland Security charged Mr. Mariscal as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).

### B.  *Procedural History*

#### 1.  IJ Proceedings

In February 2019, Mr. Mariscal appeared before an IJ and, through counsel, conceded inadmissibility and applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1).  The Government raised that Mr. Mariscal had "some convictions that might possibly" affect his cancellation application, including "contempt of Court, Obstruction of Justice, and Child Abuse."  AR, Vol. 1 at 82.  The IJ informed Mr. Mariscal that "[i]f [he] ha[d] some issues in his . . . criminal history," it was his "burden to show the Court that they [we]re not crimes involving moral turpitude or otherwise disqualifying [him]."  *Id.*  Mr. Mariscal confirmed that he understood.

---

[1] We refer throughout to the 2016 Utah Code, which applied to Mr. Mariscal's child abuse conviction.  The statute has not meaningfully changed.

In September 2019, Mr. Mariscal appeared, through counsel, for a merits hearing on his application. The Government argued Mr. Mariscal's 2007 simple assault conviction made him ineligible for cancellation and moved to deny his application without a full merits hearing. The court commented that the 2016 child abuse conviction was also disqualifying, and the Government agreed.

Mr. Mariscal then moved for a continuance to brief the prior-conviction issues. The IJ denied Mr. Mariscal's request for a continuance for lack of good cause, held he was ineligible for cancellation of removal because of the simple assault and child abuse convictions, and ordered him to be removed to Mexico.

## 2. BIA Proceedings

Mr. Mariscal appealed to the BIA, which issued a single-member decision affirming the IJ. It dismissed Mr. Mariscal's appeal, finalizing the IJ's removal order. *See* 8 C.F.R. § 1241.1(a). Mr. Mariscal timely petitioned for review, raising whether the BIA erred by affirming the IJ's denial of a continuance and whether his child abuse conviction disqualified him for cancellation of removal.[2]

## II. DISCUSSION

We address the issues in the order the IJ decided them.

---

[2] The BIA did not address whether Mr. Mariscal's simple assault conviction was disqualifying, and he does not raise the issue to this court.

3

A. *Continuance*

The BIA did not abuse its discretion when it upheld the IJ's denial of Mr. Mariscal's motion for a continuance.

1. **Standard of Review and Legal Background**

"We review the decision to deny a motion for continuance for abuse of discretion." *Zamudio Arrayga v. Garland*, No. 22-9549, 2023 WL 3410539, at *2 (10th Cir. May 12, 2023) (unpublished) (citing *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011)).[3]  "Only if the decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis, will we grant the petition for review." *Jimenez-Guzman*, 642 F.3d at 1297 (alterations and quotations omitted).  Because the BIA issued its own reasoning, we do not review the IJ's decision.  *See Miguel-Pena v. Garland*, 94 F.4th 1145, 1153 (10th Cir. 2024); *Zamudio Arrayga*, 2023 WL 3410539, at *2.

An IJ "may grant a motion for continuance for good cause shown."  8 C.F.R. § 1003.29.  "[T]he denial of a motion for continuance is within the [IJ's] discretion . . . and will not be disturbed without a showing of actual prejudice or harm." *Matter of Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983).  The petitioner must "establish prejudice from a denial of a continuance" by "'specifically articulat[ing] the particular facts involved or evidence [that] he would have presented, and otherwise fully explain how

---

[3] All unpublished cases are cited as persuasive authority consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denial of his motion fundamentally changed the result reached.'" *Zamudio Arrayga*, 2023 WL 3410539, at *3 (quoting *Matter of Sibrun*, 18 I. & N. Dec. at 357); *Ramirez-Canenguez v. Holder*, 528 F. App'x 853, 855 (10th Cir. 2013) (unpublished).

2.  **Analysis**

The BIA affirmed the IJ's denial of Mr. Mariscal's motion for a continuance. It reasoned that Mr. Mariscal "d[id] not contest the fact that he sustained the 2016 [child abuse] conviction . . . and ha[d] not explained what documents or argument he was prevented from presenting or how they would have affected the result in this case." AR, Vol. 1 at 10.

The BIA did not abuse its discretion because Mr. Mariscal did not "specifically articulate the particular facts involved or evidence which he would have presented" or "otherwise fully explain how denial of his motion fundamentally changed the result reached." *Zamudio Arrayga*, 2023 WL 3410539, at *3 (quoting *Matter of Sibrun*, 18 I. & N. Dec. at 357); *Ramirez-Canenguez*, 528 F. App'x at 855.  Nor has he done so on appeal.  He has thus failed to show the BIA's decision was irrational, "inexplicably departed from established policies, or rested on an impermissible basis." *Jimenez-Guzman*, 642 F.3d at 1297 (quotations omitted).

B.  ***Cancellation of Removal***

To be eligible for cancellation of removal, the petitioner must establish that he has not been convicted of criminal offenses under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3).  8 U.S.C. § 1229b(b)(1)(C); *see Lucio-Rayos v. Sessions*, 875 F.3d 573, 501 (10th Cir. 2017).  Section 1227(a)(2)(E)(i) lists "a crime of domestic violence, a crime of

stalking, or a crime of child abuse, child neglect, or child abandonment." The BIA correctly denied cancellation of removal because Mr. Mariscal's Utah child abuse conviction is categorically a crime of child abuse under 8 U.S.C. § 1227(a)(2).

1. **Standard of Review**

"We review the BIA's legal conclusions de novo" and its "factual findings for substantial evidence." *Miguel-Pena*, 94 F.4th at 1153. Whether a state conviction is categorically a crime under 8 U.S.C. § 1227(a)(2) is a legal question we review de novo. *See Jimenez v. Sessions*, 893 F.3d 704, 709 (10th Cir. 2018).

"When, as here, a single BIA member issues a reasoned decision addressing a petitioner's arguments on appeal, we confine our review to the BIA's decision and will not address the IJ's decision except where the BIA has explicitly incorporated his reasoning." *Miguel-Pena*, 94 F.4th at 1153 (alterations and quotations omitted).

2. **Categorical Approach**

We use the "categorical approach" to decide whether a state conviction meets the federal definition of a disqualifying criminal conviction under the Immigration and Nationality Act ("INA"). *Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013). Under that approach, "we compare the elements of the statute of conviction with the generic federal definition of the crime to determine whether conduct that would satisfy the former would necessarily also satisfy the latter." *Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1161 (10th Cir. 2021) (per curiam). In doing so, "we ignore [Mr. Mariscal]'s actual conduct and examine only the minimum conduct needed for a conviction under the relevant state law." *Id.* (quotations omitted). We require the petitioner to show "a

6

realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic [federal] definition." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

"[T]o determine the minimum conduct proscribed by the relevant [state] criminal statute," "we follow the decisions of the state's highest court," and "where that court has *not* interpreted the provision . . . , we must predict how it would rule on the issue." *De Leon v. Lynch*, 808 F.3d 1224, 1230-31 (10th Cir. 2015).

3. **Federal Generic Definition of Child Abuse and the Utah Crime of Class B Misdemeanor Child Abuse**

a. *Federal definition*

Section 1227(a)(2)(E)(i) does not define "a crime of child abuse," but the BIA and this court have interpreted the phrase.

i. <u>BIA</u>

The BIA interprets "child abuse" in § 1227(a)(2)(E)(i) to include "any offense involving [(1)] an intentional, knowing, reckless, or criminally negligent act or omission that [(2)] [(a)] constitutes maltreatment of a child or . . . [(b)] impairs a child's physical or mental well-being." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 517 (BIA 2008).

"[M]altreatment of a child" includes child endangerment offenses that do not "requir[e] proof of actual harm or injury." *Matter of Soram*, 25 I. & N. Dec. 378, 380-81 (BIA 2010) (quotations omitted). We have interpreted *Matter of Soram* to say that when injury is not required, the statute must have "as an element of the crime, a sufficiently high risk of harm to a child" to meet the federal definition. *Zarate-Alvarez*, 994 F.3d

7

at 1163 (citing *Matter of Soram*, 25 I. & N. Dec. at 385); *see also Matter of Mendoza Osorio*, 26 I. & N. Dec. 703, 710-11 (BIA 2016). To have a sufficiently high risk of harm, "the statute must require proof of a 'likelihood' or 'reasonable probability' that a child will be harmed, not a mere possibility or potential for harm." *Matter of Rivera-Mendoza*, 28 I. & N. Dec. 184, 187 (BIA 2020).

*Matter of Soram* held that a Colorado statute that prohibits "permitting [a] child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health" required a sufficiently high risk of harm. 25 I. & N. Dec. at 384-85 (quotations omitted).

*Matter of Mendoza Osorio* held that a statute criminalizing "conduct likely to be injurious to a child" also fell within the federal definition. 26 I. & N. Dec. at 711-12 (quotations omitted).

        ii.  Tenth Circuit

In *Ibarra*, we held that the BIA's definition of a "crime of child abuse" was "overinclusive" to the extent it covered "non-injurious criminally negligent conduct." 736 F.3d at 907, 918. But we still accept the BIA's conclusion in *Matter of Soram* that § 1227(a)(2)(E)(i) includes "state child-endangerment convictions for knowing or reckless conduct that does not result in injury to the child, provided the state statute requires, as an element of the crime, a sufficiently high risk of harm to a child." *Zarate-Alvarez*, 994 F.3d at 1164.

*     *     *     *

8

In summary, the case law is clear that, as relevant here, the federal definition of child abuse includes recklessness mens rea coupled with (1) injurious conduct or (2) non-injurious conduct, provided the state statute requires, as an element of the crime, a sufficiently high risk of harm to a child.

b. *Utah crime of misdemeanor child abuse*

i. Mens rea

Under Utah Code Ann. § 76-5-109(3)(b), reckless child abuse is a class B misdemeanor. A person acts "[r]ecklessly" "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Utah Code Ann. § 76-2-103(3).

ii. Actus reus

The Utah statute criminalizes "inflict[ing] upon a child physical injury or . . . caus[ing] or permit[ting] another to inflict physical injury upon a child." *Id.* § 76-5-109(3)(b). It defines "[p]hysical injury" as:

> [A]n injury to or condition of a child which impairs the physical condition of the child, including:
> (i) a bruise or other contusion of the skin;
> (ii) a minor laceration or abrasion;
> (iii) failure to thrive or malnutrition; or
> (iv) any other condition which imperils the child's health or welfare and which is not a serious physical injury as defined in Subsection (1)(f).

*Id.* § 76-5-109(1)(e).

The Utah Court of Appeals has analyzed the physical injury requirement in Utah Code Ann. § 76-5-109(3)(b), (1)(e). The court held in *Provo City v. Cannon*, 994 P.2d

9

206 (Utah Ct. App. 1999), that "actual physical impact on the child" is not required under § 76-5-109(1)(e)(iv). *Id.* at 210. It reasoned that the statute's purpose was broad and that the term "imperil" could be read to mean "endanger." *Id.* at 209-10. It held that "suspend[ing] an infant by his arms over a third-story balcony railing for several minutes" "imperil[ed]" the child's health or welfare. *Id.* In *State v. Piep*, 84 P.3d 850 (Utah Ct. App. 2004), the same court held that "a filthy house" "create[d] a condition that imperil[ed] a child's health or welfare." *Id.* at 853.

In *Ibarra*, this court "examined the criminal laws of all fifty states and the District of Columbia in effect in 1996 to determine the majority approach to crimes of child abuse, abandonment, neglect, and endangerment." 736 F.3d at 915. We said that Utah Code Ann. § 76-5-109 "did not appear to criminalize child abuse, endangerment, abandonment, or neglect . . . unless the child was injured." *Id.* at 921 (citing § 76-5-109(2) (1996), an earlier-dated statute with the same text as the 2016 version); *see also id.* at 912 n.11 (explaining that § 76-5-109 "required an injury").

4. **Additional Procedural History**

The BIA held that Mr. Mariscal was ineligible for cancellation of removal because his child abuse conviction was categorically a crime of child abuse under 8 U.S.C. § 1227(a)(2)(E)(i). It reasoned that under the categorical approach, the Utah statute did not sweep more broadly than the federal crime because it "ha[d] as elements a mens rea of recklessness and [an actus reus of] physical injury to a child." AR, Vol. 1 at 9.

5. **Analysis**

Mr. Mariscal argues Utah misdemeanor child abuse is broader than the federal generic definition of child abuse, and therefore his conviction does not disqualify him from cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).  We disagree.

a. *Mens rea*

Mr. Mariscal's crime of conviction has a mens rea of recklessness.  Utah Code Ann. § 76-5-109(3)(b).  That matches the generic federal definition:  "[A] 'knowingly or recklessly' mens rea is consistent with [the BIA's] definition of a crime of child abuse . . . ."  *Matter of Soram*, 25 I. & N. Dec. at 383; *see Zarate-Alvarez*, 994 F.3d at 1164.  Mr. Mariscal's contrary arguments fail.

First, he contends that we should read *Borden v. United States*, 141 S. Ct. 1817 (2021)—which held that a crime with a recklessness mens rea cannot qualify as a "violent felony" under the Armed Career Criminal Act—to exclude crimes with a recklessness mens rea from § 1227(a)(2)(E)(i).  *See* Pet. Br. at 18-21.  He argues that "violent felony" is similar to "crime of violence," as defined in 18 U.S.C. § 16(a).  *Id.* at 19.  But Mr. Mariscal does not explain how this argument pertains to "crime of child abuse" in the INA.  Nor could he.  The "crime of child abuse" in § 1227(a)(2)(E)(i) has nothing to do with § 16(a), and *Borden* is distinguishable because, unlike the Armed Career Criminal Act, the generic federal definition of child abuse here includes a recklessness mens rea.  *Zarate-Alvarez*, 994 F.3d at 1164.

11

Second, Mr. Mariscal argues Utah's standard for recklessness falls short of *Matter of Soram*'s sufficiently high risk of harm standard. Pet. Reply Br. at 9. But this risk of harm requirement concerns actus reus, not mens rea.

b. *Actus reus*

The Utah statute's actus reus requirement also fits within the federal definition. The statute requires at least actual endangerment, and Mr. Mariscal has not shown Utah would prosecute less severe conduct.[4]

i. Scope of the Utah statute

In *Ibarra*, this court said Utah Code Ann. § 76-5-109(3)(b), (1)(e) "d[oes] not appear to criminalize child . . . endangerment . . . unless the child was injured." 736 F.3d at 921 (citing § 76-5-109(2) (1996)); *see also id.* at 912 n.11 (explaining that § 76-5-109 "required an injury"). The BIA also interpreted the statute that way in its order, *see* AR, Vol. 1 at 9,[5] and under that reading, the statute is a categorical fit with the federal definition of child abuse.

---

[4] Mr. Mariscal also argues the Utah statute criminalizes omissions and the federal definition does not. Pet. Br. at 24. But in *Matter of Velazquez-Herrera*, the BIA interpreted § 1227(a)(2)(E)(i) to include "any offense involving an intentional, knowing, reckless, or criminally negligent *act or omission*" that harms a child. 24 I. & N. Dec. at 517 (emphasis added); *accord Zarate-Alvarez*, 994 F.3d at 1163.

[5] The Utah Supreme Court has said that the "child abuse statute, Utah Code Ann., § 76-5-109 (Supp. 1994), requires only general physical injury to a child's body (some forms of the offense do not even require touching, such as subsection 76-5-109(1)(c)(vii), (x) [(1994)], which refers to any conduct resulting in developmental delay, starvation, or failure to thrive)." *State v. Lowder*, 889 P.2d 412, 414 (Utah 1994).

But even if § 76-5-109(1)(e)(iv) permits a conviction based on actual endangerment without injury, *see Cannon*, 994 P.2d at 210; *Piep*, 84 P.3d at 853, it falls within the federal definition because actual endangerment is "a sufficiently high risk of harm," *Zarate-Alvarez*, 994 F.3d at 1163.

The Eighth Circuit and the BIA have found a sufficiently high level of risk under the categorical approach when a state statute requires a child be actually endangered. For example, in *Al-Masaudi v. Garland*, 44 F.4th 1079 (8th Cir. 2022), the court held a Nebraska statute that criminalized "plac[ing a child] in a situation that endangers his or her life or physical or mental health" matched § 1227(a)(2)(E)(i) because "[t]he 'endangers' element of the [state] offense mean[t] 'to expose a minor child's life or health to danger or the peril of probable harm or loss,' and cover[ed] conduct which presents the likelihood of injury to the child." *Id.* at 1083 (citation and quotations omitted). The BIA similarly held that a New York statute criminalizing acting "in a manner likely to be injurious to the physical, mental or moral welfare of a child" had a sufficiently high risk of harm to fit the federal definition of child abuse. *Matter of Mendoza Osorio*, 26 I. & N. Dec. at 705, 711-12 (citation omitted).

The Utah statute sweeps no broader than the Nebraska or New York statutes. *Cannon* held that "imperil" means "endanger." 994 P.2d at 209 (quotations omitted). And creating "a condition which imperils the child's health or welfare," Utah Code Ann. § 76-5-109(1)(e)(iv), necessarily exposes a child to a "reasonable probability" of injury, *Matter of Rivera-Mendoza*, 28 I. & N. Dec. at 187, because § 76-5-109(1)(e)(iv) requires "an injury to" or an "impair[ment] [of] the [child's] physical condition."

*Matter of Mendoza Osorio* also recognized that only rarely would a state statute include an insufficient risk of harm and therefore fall outside the federal definition. *See* 26 I. & N. Dec. at 711. Its sole example was Cal. Penal Code § 273a(b), which prohibits "conduct that places a child in a situation where his or her person or health *may* be endangered." *Id.* (quotations omitted). The BIA agreed with *Fregozo v. Holder*, 576 F.3d 1030 (9th Cir. 2009), which held that § 273a(b) was broader than the federal definition because it "d[id] not require . . . any particular likelihood of harm." *Id.* at 1037; *Matter of Mendoza Osorio*, 26 I. & N. Dec. at 711. *Fregozo*'s conclusion was based in part on contrasting § 273a(b) with § 273a(a), which prohibits "caus[ing] or permit[ting] [a] child to be placed in a situation where his or her person or health *is endangered*." Cal. Penal Code § 273a(a) (emphasis added); *see Fregozo*, 576 F.3d at 1037-38.

The Utah statute does not include "may" or similar low-probability language.[6] Its "imperil" requirement corresponds to Cal. Penal Code § 273a(a)—not § 273a(b). *Cannon* explained that "imperil" is the same as the endangerment requirement in *People v. Odom*, 226 Cal. App. 3d 1028 (Cal. Ct. App. 1991). *Cannon*, 994 P.2d at 209 n.7. *Odom* referenced Cal. Penal Code § 273a(a) and said the provision was "intended to

---

[6] "May" and similar qualifying words do not necessarily take a statute outside the federal definition. *See Matter of Rivera-Mendoza*, 28 I. & N. Dec. at 187-88 (holding that a statute criminalizing an action that "may be likely to endanger the health or welfare of [a] child" matched the federal definition because state courts had interpreted the phrase to require "a showing of more than a mere possibility of, or potential for, harm" (quotations omitted)).

protect children from situations in which the probability of serious injury is great."

226 Cal. App. 3d at 1033 (quotations omitted).

ii. Mr. Mariscal's argument

Mr. Mariscal responds only that "welfare" in § 76-5-109(1)(e)(iv) can be read

broadly to include "[f]ailing to provide for a comfortable living" or "placing an

unattended infant in the middle of a tall bed without a railing." Pet. Br. at 23-26. His

argument fails for two reasons.

First, he must "at least point to his own case or other cases in which the [Utah]

courts in fact did apply the statute" to reach such conduct. *Gonzales v. Duenas-Alvarez*,

549 U.S. 183, 193 (2007). Even if we overlook his failure to cite any Utah cases, the

cases we have found—*Cannon* and *Piep*—do not support his position. In both, the

children were actually endangered and experienced a substantial risk of harm. In

*Cannon*, the defendant held an infant over a third-story balcony for several minutes.

994 P.2d at 210. And in *Piep*, the defendant forced children to live in "a filthy house

with a very foul odor, rotten and moldy food in and out of the refrigerator, a green

substance running out of the refrigerator onto the floor, garbage and food on the floor,

clothes everywhere, brown stains on the wall, and what appeared to be human feces."

84 P.3d at 853. Both cases concerned actual endangerment and neither criminalized

placing a child at risk of a mere possibility of harm.[7]

---

[7] *Cannon* noted that its holding aligned with Arizona and California endangerment law. 994 P.2d at 209 n.7 (citing *State v. Deskins*, 731 P.2d 104, 105-06 (Ariz. Ct. App. 1986); *Odom*, 226 Cal. App. 3d at 1032-33). The Arizona and California cases it cited also do not show that Utah would prosecute conduct threatening a child with less than

Second, the word "welfare" is not used in isolation.  The statute reads:  "'Physical injury' means an injury to or condition of a child which impairs the physical condition of the child, including:  . . . any other condition which imperils the child's health or welfare . . . ."  Utah Code Ann. § 76-5-109(1)(e)(iv).  Conduct that "imperils [a] child's . . . welfare" must still constitute "an injury to" or an "impair[ment] [of] the [child's] physical condition."  *Id.*

* * * *

Because the Utah statute includes a recklessness mens rea and an actus reus requiring endangerment with a sufficient risk of harm, Mr. Mariscal's Utah child abuse conviction is categorically a crime of child abuse under 8 U.S.C. § 1227(a)(2).

### III.  CONCLUSION

We deny the petition for review.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

actual endangerment.  In *Deskins*, an Arizona court held that forcing children to "sle[e]p[] outside at night" was not actual endangerment but subjecting the child to extremely "unsanitary conditions" was.  731 P.2d at 105-06.  And in *Odom*, the home was extremely unsanitary and had many "potential perils" for children, including access to loaded weapons and insecure chemicals storage.  226 Cal. App. 3d at 1033.

16